STATE of Minnesota, Respondent,

v.

**Dirk Lionel GOELZ, Appellant.**

**No. A06–2424.**

Supreme Court of Minnesota.

Dec. 27, 2007.

---

David John Risk, Caplan Law Firm, PA, Minneapolis, MN, for Appellant.

Lori Swanson, Attorney General, Peter Reed Marker, Asst. Attorney General, St. Paul, MN, David Jon Torgelson, Renville County Attorney, Olivia, MN, for Respondent.

## OPINION

MEYER, Justice.

A Renville County jury found appellant Dirk Lionel Goelz guilty of first-degree domestic abuse murder and first-degree manslaughter (heat-of-passion) for the shooting death of his girlfriend, Kerri Robinson. The district court entered judgment on the domestic abuse murder conviction and sentenced Goelz to life in prison. In this direct appeal we are asked to determine the admissibility of certain evidence to prove the existence of a "past pattern of domestic abuse" under Minn. Stat. § 609.185(a)(6) (2006). Goelz argues that: (1) the district court abused its discretion by admitting evidence of Goelz's ex-wife obtaining an order for protection (OFP) and Goelz's violation of that order; (2) the district court committed plain error by admitting evidence of Goelz's "faked suicide"; and (3) the district court erred in refusing to dismiss the indictment. We affirm Goelz's conviction.

On January 30, 2006, Goelz shot and killed his girlfriend, Kerri Robinson, with a shotgun in Goelz's home. Kerri and two of her children had been living with Goelz since September 2005. Kerri planned to move that day from Goelz's house to another house she had rented. That afternoon Kerri was waiting at Goelz's house for her son to return home from school. According to Goelz, he and Kerri became involved in an argument and she threatened to publicly accuse him of molesting a teenage girl three days earlier while Kerri and Goelz were attending a party. At this point, Goelz retrieved a shotgun from his bedroom, loaded it with three shells, left the bedroom, and fired the gun at Kerri as she stood at the steps leading to the basement. As Kerri retreated into the basement, Goelz followed her and fired the gun two more times. Goelz then left the basement, went upstairs, and attempted to take

his own life with the shotgun, but was unsuccessful. Kerri died as a result of gunshot wounds.

Goelz then drove to his brother's house and told him that he had shot Kerri. After a brief conversation, in which Goelz told his brother he planned to commit suicide, Goelz grabbed a handgun that his brother had on the counter in his kitchen, left the house, and drove away. His vehicle ran out of gas near the home of his friends, Jim and Paula Busack. He walked to their house and told them that he had shot Kerri. The Busacks convinced Goelz to turn himself over to the authorities, and Paula Busack then drove Goelz to the Renville County Law Enforcement Center. Paula went in and told the authorities about the shooting. While outside, Goelz shot himself once in the chest with the handgun he had taken from his brother's house. Police officers apprehended Goelz shortly thereafter.

On January 31, 2006, the State charged Goelz with intentional murder in the second degree in violation of Minn.Stat. § 609.19, subd. 1(1) (2006). The State empanelled a grand jury in March 2006. The grand jury indicted Goelz for murder in the first degree (premeditated) under Minn.Stat. § 609.185(a)(1) (2006), murder in the first degree (domestic abuse) under Minn.Stat. § 609.185(a)(6), and murder in the second degree (intentional) under Minn.Stat. §§ 609.19, subd. 1(1), and 609.11, subd. 5(a) (2006).

At trial, the State offered evidence that Goelz had committed acts of domestic abuse against Kerri, Kerri's 15–year–old daughter, Cassandra Robinson, and his ex-wife, Denise Goelz. The evidence of domestic abuse against Kerri and Cassandra consisted of the following testimony. Cassandra testified that in the winter of 2005 Goelz and Kerri began arguing in the front seat of Goelz's pickup truck while driving Cassandra home from her friend's house. Cassandra saw Goelz "punch" Kerri in her arm, after which both Cassandra and Kerri got out of the vehicle and walked to a nearby house. Goelz testified he nudged Kerri with his elbow as a reaction to being slapped and that he did not "punch" her.

Cassandra testified that at a party celebrating Kerri's birthday in mid-January 2006, Goelz threatened to kill Kerri. Upon hearing Goelz threaten to kill her mother, Cassandra verbally confronted him. Cassandra testified that when she walked away from that argument, Goelz hit her in the back of the head. Two other guests at the party, Benjamin O'Brien and Cindy Weber, testified that they overheard someone get slapped during the argument between Cassandra and Goelz. Though Cassandra testified she was not hurt, she said she was frightened because of Goelz's earlier threat to kill. Goelz denied striking Cassandra.

Leann McMurtrey, a friend of Kerri's, testified to overhearing Goelz threaten to kill Kerri during a telephone conversation between Leann and Kerri. McMurtrey also overheard Goelz threaten to "beat [Kerri] and [her] kids to a bloody pulp" if Kerri called the police. Goelz denied ever threatening Kerri.

There was also evidence that Goelz committed acts of domestic abuse against his ex-wife, Denise Goelz. The couple was married from 1997 through 1999. Denise testified that in 1998, shortly after their marriage, Goelz hit Denise with his hand, leaving bruises on her face and arms. Goelz denied this incident.

Denise testified that in the winter of 1999, during an argument in the couple's kitchen, Goelz threw her to the ground, choked her, and threatened to kill her. During the same incident, Denise testified that Goelz threatened to shoot her and her

children. Goelz denied that he was the aggressor and claimed that he placed his arm around Denise's neck to protect himself because Denise was threatening him with a knife. Following this incident, Denise obtained an OFP. At the hearing on the OFP, no testimony was given because Goelz agreed to the order. The OFP did not prevent contact between Goelz and Denise, but ordered Goelz to commit no acts of domestic abuse against Denise or her children and to attend anger management courses. At Goelz's murder trial, the district court admitted the OFP over Goelz's objection.

Denise testified to a third incident of domestic abuse occurring in March 1999 when Goelz hit her in the face with his fist, causing a bruise. Denise briefly testified that when this happened Goelz was charged with a crime for violating the OFP. Goelz denied striking Denise or violating the OFP.

The State offered evidence, without objection, that Goelz had faked a suicide attempt during his marriage to Denise. Denise testified that once during the marriage Goelz went outside to his truck with a gun, shot the gun into the air, and then slumped over the steering wheel unhurt. Goelz testified that the incident followed an argument he had with Denise. At the time he felt like committing suicide, but could not bring himself to do it. On cross-examination Goelz explained, "I imagine I wanted her to feel bad because she made me feel bad."

Goelz did not deny having killed Kerri. He testified that Kerri's threat to make public an untrue story that he molested a teenage girl provoked him, and that he lost control of his actions. Goelz testified that while he was retrieving the gun and firing it at Kerri, he "went delirious" and "had no control." Again, Goelz denied each of the incidents of a past pattern of domestic abuse.

On September 29, 2006, the jury convicted Goelz of first-degree manslaughter (heat-of-passion) in violation of Minn.Stat. § 609.20(1) (2006), and first-degree murder (domestic abuse) in violation of Minn.Stat. § 609.185(a)(6). The district court entered judgment on the domestic abuse murder conviction, and sentenced Goelz to life in prison.

On appeal Goelz argues (1) that the district court abused its discretion by admitting testimony about the OFP, its violation, and the order itself; (2) that admitting the "faked suicide" evidence was plain error; and (3) that the district court erred in denying his motion to dismiss the indictment.

### I.

■■ Goelz objected to the introduction of the OFP. "Rulings on evidentiary matters rest within the sound discretion of the trial court, and we will not reverse such evidentiary rulings absent a clear abuse of discretion." *State v. Sanchez–Diaz,* 683 N.W.2d 824, 835 (Minn.2004) (quoting *State v. Roman Nose,* 667 N.W.2d 386, 392 (Minn.2003)).

### A.

■■ Goelz argues that allowing the OFP evidence at trial was an abuse of discretion because neither issuance of an OFP nor violation of the OFP is an enumerated offense that makes up domestic abuse under section 609.185(c)(1) (2006). The State concedes that whether an OFP exists or is violated is not conclusive evidence of an incident of domestic abuse, because the fact that a court issued an OFP is not an enumerated offense under the plain language of section 609.185. Nevertheless, the State argues that the OFP evidence becomes relevant because it supported

Denise Goelz's testimony that appellant assaulted and threatened her. In other words, the fact that an OFP was issued after the assault supports the existence of an incident of domestic abuse.

A victim of domestic abuse may file a petition for an OFP under Minn.Stat. § 518B.01, subd. 4 (2006). "Domestic abuse" is defined as

> (1) physical harm, bodily injury, or assault; (2) the infliction of fear of imminent physical harm, bodily injury, or assault; or (3) terroristic threats, within the meaning of section 609.713, subdivision 1; or criminal sexual conduct, within the meaning of section 609.342, 609.343, 609.344, 609.345, or 609.3451; or interference with an emergency call within the meaning of section 609.78, subdivision 2.

*Id.* subd. 2(a) (2006). Under section 518B.01, subd. 2(a), these actions are domestic abuse when "committed against a family or household member by a family or household member" as subdivision 2(b) defines "family or household member." *Id.* subd. 2 (2006). Accompanying the petition for an OFP, a victim of domestic abuse must file an affidavit, made under oath, describing the acts of domestic abuse committed. *Id.* subd. 4(b) ("A petition for relief shall allege the existence of domestic abuse, and shall be accompanied by an affidavit made under oath stating the specific facts and circumstances from which relief is sought.").

Domestic abuse murder requires the State to prove that the defendant "engaged in a past pattern of domestic abuse upon the victim or upon another family or household member." Minn.Stat. § 609.185(a)(6). For the purposes of domestic abuse murder, the definition of "domestic abuse" includes acts that constitute a violation of a limited number of criminal statutes prohibiting such conduct as assault, criminal sexual conduct, and terroristic threats. *See* Minn.Stat. § 609.185(c)(1) (2006). The statute does not require proof of domestic abuse convictions. *State v. Cross,* 577 N.W.2d 721, 727 (Minn.1998). The State must prove the existence of the past pattern of domestic abuse beyond a reasonable doubt, but the individual acts need not be established by proof beyond a reasonable doubt. *Sanchez–Diaz,* 683 N.W.2d at 832.

We have not yet addressed the admissibility of an OFP issued under Minn.Stat. § 518B.01 to prove a past pattern of domestic abuse, where the petitioner who was granted the OFP is not the murder victim and is therefore available to testify at trial. Our prior decisions in this area have considered hearsay and confrontation objections to the introduction of murder victims' affidavits filed in support of an OFP. *See State v. Grube,* 531 N.W.2d 484, 489–90 (Minn.1995) (determining, under the pre-*Crawford* standard, that affidavits in support of murder victim's OFP were sufficiently trustworthy to avoid violation of the Confrontation Clause); *State v. Bradford,* 618 N.W.2d 782, 797–98 (Minn. 2000) (concluding that the record provided too little information to determine whether affidavits in support of an OFP were sufficiently trustworthy to satisfy hearsay rules, but that any error made in the admission of the affidavits at trial was harmless). Unlike in *Grube* and *Bradford,* the State did not offer the affidavit Denise made in support of the OFP. Rather, Denise testified at trial about the acts of domestic abuse underlying the OFP. There was no objection to her testimony, but there was vigorous objection to admission of the order itself.

Goelz argues that the district court abused its discretion by admitting evidence of an OFP because neither issuance of an OFP nor violation of the OFP is an enu-

merated offense that makes up domestic abuse under section 609.185(c)(1). The State agrees that an OFP is not, by itself, conclusive evidence of an incident of domestic abuse because the issuance of an OFP or violation of an OFP is not an enumerated offense under the definition of domestic abuse. Nevertheless, the State argues that the OFP evidence was relevant on other grounds—it supported and corroborated Denise Goelz's testimony that appellant assaulted and threatened her. In other words, the fact that an OFP was issued after the assault lends credibility to the testimony of Denise Goelz and, therefore, is relevant to prove the existence of an incident of domestic abuse.

We have carefully examined the contents of the order and make the following observations. The order contains none of the allegations Denise made in her affidavit. The order contains no findings that domestic abuse occurred. The order contains an unchecked box where the issuing court could have indicated that "[a]cts of domestic abuse have occurred" and then several blank lines for a narrative description of the acts of domestic abuse. Instead, the issuing court checked a box next to which is the following sentence: "Respondent [Goelz] does not object to an Order for Protection and understands that the order will be enforced *as if* there was an admission or finding of domestic abuse." (Emphasis added.) Because Goelz did not object to the order, no testimony was given. The court checked two other boxes ordering Goelz to "not commit acts of domestic abuse against [Denise] or the child[ren]" and to participate in an anger management program.

The evidentiary value of the order was weak. It describes none of Denise's allegations that, if provided, would tend to be probative on Denise's veracity; i.e., if her testimony at Goelz's trial "matched" her allegations in the OFP, then the OFP would lend credibility to her story. It contains no findings by the court of any act of domestic abuse by Goelz. Importantly, it contains no admissions by Goelz that he engaged in any act of domestic abuse.

The potential for the jury to be improperly influenced by the order is considerable. The State argued in closing that the acts of domestic abuse toward Denise were established because "[s]he obtained an Order For Protection. She went to court * * *." The implication in the argument is that because the order issued, the allegations were true. In fact the order does nothing more than acknowledge that Goelz chose to resolve the dispute by agreement. On these facts, we conclude that the probative value of the OFP was so weak and the potential for the OFP to improperly influence the jury was so great that it was an abuse of discretion to admit the order. We hold that evidence of the OFP was inadmissible to corroborate Denise's testimony about the underlying assaults and threats because the order contained none of Denise's allegations, Goelz did not admit to those allegations, and the order itself indicated only that he did not object to the order and agreed to its enforcement.

### B.

We next consider whether the error in admitting the OFP was harmless. We must consider whether "there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Asfeld,* 662 N.W.2d 534, 544 (Minn.2003) (quoting *State v. Stewart,* 643 N.W.2d 281, 298 (Minn.2002), and citing cases indicating that this standard applies where the error does not affect a defendant's constitutional rights).

Goelz argues that the error in admitting the OFP was not harmless because the evidence of a pattern of domestic abuse

was "overwhelmingly weak," the district court's limiting instructions drew special attention to the OFP evidence, and the State argued the evidence to the jury in closing. The State argues that the other evidence of domestic abuse was stronger than Goelz suggests and notes that the State "briefly referenced" the OFP in closing argument.

We conclude that the district court's error in admitting the OFP did not significantly affect the verdict for the following reasons.[1] First, the district court instructed the jury that they were to consider the evidence admitted through Denise only for the question of whether there was a past pattern of domestic abuse and that the appellant was not being tried for and could not be convicted of any offense other than those charged. Goelz argues that by reminding the jury of the limiting instruction upon the introduction of the OFP, the district court keyed the jury's attention to a specific piece of evidence that was inadmissible to prove a past pattern of domestic abuse. But the court's instruction and its reminder to the jury were both addressed to all the evidence admitted through Denise. Such a limiting instruction is aimed at reducing potentially unfair prejudice in domestic abuse murder cases. See State v. Laine, 715 N.W.2d 425, 433 (Minn.2006) (rejecting argument that a similar past pattern of domestic abuse instruction cautioning jurors that a defendant may not be tried or convicted for any offense other than those charged impliedly eliminated the presumption of innocence).

Second, Goelz's characterization of the other evidence of a pattern of domestic abuse as "overwhelmingly weak" is an overstatement. Goelz argues that the State "produced no evidence of violent assaults." Although the evidence of domestic abuse against the murder victim, Kerri, was limited to the elbow-jabbing incident in Goelz's truck and several threats on Kerri's life, a past pattern of domestic abuse can be established by incidents that involve individuals other than the murder victim. See Minn.Stat. § 518B.01, subd. 2 (defining "family or household members" to include a former spouse); Asfeld, 662 N.W.2d at 541 ("[I]n stating that the past pattern of abuse must have been committed 'upon the victim or upon another family or household member,' the legislature creates a parallel between the victim as one 'family or household member' and the prior subject of abuse as another 'family or household member.' "). Contrary to Goelz's assertion that there was no evidence of violent acts, the State presented evidence that Goelz committed acts of domestic abuse against Cassandra, Denise, and Kerri, all of whom meet the statutory definition of family or household member.

Third, in comparison to the presentation of Goelz's acts of domestic abuse, the evidence of the OFP's existence and the fact that it was violated made up a small portion of the State's evidence establishing a past pattern of domestic abuse. And finally, the State made only limited reference to the OFP evidence in closing when it argued that the fact Denise obtained an OFP corroborated her testimony because she sought outside intervention. The balance of the State's closing argument regarding a past pattern of domestic abuse focused on the testimony about Goelz's acts of assaulting and threatening Denise, Cassandra, and Kerri. For these reasons, we hold that there is no reasonable possi-

---

1. We need not address the admissibility of Denise's brief testimony that Goelz subsequently violated the OFP because we conclude that any error that may exist in allowing that testimony was harmless. It is also worth noting that Goelz did not specifically object to this testimony at trial.

bility that the introduction of the OFP significantly affected the verdict, and thus its admittance was harmless error.

## II.

■ We turn now to Goelz's argument that the district court committed plain error when it admitted evidence of his "faked suicide."

Not only did Goelz fail to object to this testimony, he affirmatively developed and expanded the evidence of his faked suicide during his own testimony. Although defense counsel's opening statement did not refer to the faked suicide incident, his opening statement did refer to Goelz's alleged attempted to kill himself immediately following the murder in this case.

■ The invited error doctrine prevents a party from asserting an error on appeal that he invited or could have prevented in the court below. *Krenik v. Westerman*, 201 Minn. 255, 262, 275 N.W. 849, 852 (1937). This court has held that a defendant cannot on appeal raise his own trial strategy as a basis for reversal. *State v. Helenbolt*, 334 N.W.2d 400, 407 (Minn.1983). The invited error doctrine, however, does not apply to plain errors. *State v. Goodloe*, 718 N.W.2d 413, 424 (Minn.2006) (citing *State v. Gisege*, 561 N.W.2d 152, 158 n. 5 (Minn.1997)). To establish a plain error a defendant must demonstrate that (1) there was an error, (2) it was plain, and (3) it affected substantial rights. *State v. Reed*, 737 N.W.2d 572, 583 (Minn.2007). The defendant generally bears the burden of persuasion with respect to the third factor. *Id.* at 583–84. If a defendant fails to establish that the claimed error affected his substantial rights, we need not consider the other factors. *State v. Manley*, 664 N.W.2d 275, 283 (Minn.2003). On the other hand, if a defendant establishes all three factors, we then consider the fourth factor: whether

the error should be addressed "to ensure fairness.and the integrity of the judicial proceedings." *Reed*, 737 N.W.2d at 583 (quoting *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998)).

Testifying in his own defense, Goelz explained that he did not fake a suicide, but rather that he sincerely felt like committing suicide but could not carry through with it. This testimony followed direct examination by Goelz's attorney about Goelz's experience as a member of the Army Reserves serving in Iraq and the effect of that experience on his mental well-being. Then, in its closing argument, the defense highlighted the effect of Goelz's military experience on his state of mind and mentioned his faked suicide as part of the "surrounding circumstances" of the manner in which Kerri was killed. This questioning and the closing argument formed an affirmative trial strategy for a heat-of-passion defense. Thus, the defense chose not to object to the testimony about the faked suicide, affirmatively developed testimony about it on direct examination, and then argued in closing that it supported a manslaughter defense.

The admission of the faked suicide evidence does not fall within the plain error exception to the invited error doctrine, because based on this record, Goelz has failed to establish that his substantial rights were violated by the admission of the faked suicide evidence. We conclude that Goelz waived any error relating to the admission of the faked suicide attempt because he invited this error and he failed to establish that the error fell within the plain error exception to the invited error doctrine.

## III.

■ Finally, we address Goelz's argument that the presentation of inadmissi-

ble evidence to the grand jury required dismissal of the indictment.

> [A]n indictment returned by a legally constituted and unbiased grand jury, * * * if valid on its face, is enough to call for trial of the charge on its merits. The general rule that emerges is that a presumption of regularity attaches to the indictment, and it is a rare case where an indictment will be invalidated.

State v. Inthavong, 402 N.W.2d 799 (Minn. 1987) (citations and quotation marks omitted). "An indictment shall be based on evidence that would be admissible at trial," Minn. R.Crim. P. 18.06, subd. 1, but "[r]eception of inadmissible evidence shall not be grounds for dismissal of an indictment if there is sufficient admissible evidence to support the indictment." Minn. R.Crim. P. 18.06, subd. 2. The already heavy burden a criminal defendant bears in seeking to overturn an indictment is "made even heavier when * * * the defendant has been found guilty beyond a reasonable doubt following a fair trial." State v. Greenleaf, 591 N.W.2d 488, 498 (Minn. 1999).

Goelz argues: (1) that the State presented inadmissible evidence of the OFP; (2) that the State presented inadmissible character evidence through Kerri's mother, Janice Robinson; (3) that the admissible evidence presented to the grand jury on a past pattern of domestic abuse was weak; and (4) that the State's attorney gave improper instructions to the grand jury. The State argues: (1) that OFP evidence was admissible, and if not that there was sufficient admissible evidence to support a probable cause determination on the domestic abuse murder charge; (2) that Janice Robinson's testimony was not inadmissible character evidence; and (3) that any deficiency in the grand jury instructions was not so egregious as to have compromised the grand jury process.

Janice Robinson testified during the grand jury proceedings that on some occasions when she called her daughter she could hear Goelz screaming at Kerri. She also stated that Goelz had no feelings and did not like Kerri's children. She testified that Goelz had been convicted of driving while intoxicated and that Kerri told her that she and Goelz were having significant relationship problems. Even if we assume that this evidence was inadmissible, there remained ample evidence at the grand jury proceedings to support the probable cause determination that Goelz engaged in a past pattern of domestic abuse. The other evidence of a past pattern of domestic abuse presented to the grand jury mirrored that testified to at trial by Cassandra, Denise, Benjamin O'Brien, Cindy Weber, and Leann McMurtrey. We also note that because it was harmless error to admit the OFP evidence at trial, presenting that evidence to the grand jury did not compromise the probable cause determination. At trial the evidence established for a petit jury that the State had proved beyond a reasonable doubt a past pattern of domestic abuse. Based on the record of the grand jury proceedings, we cannot say that Goelz has met the even heavier burden required to overturn an indictment after a defendant has been convicted beyond a reasonable doubt at a fair trial. See Greenleaf, 591 N.W.2d at 498.

We now turn to Goelz's argument that the State's attorney gave improper instructions to the grand jury. Instructions to a grand jury are not required to contain the same level of detail as those delivered to a petit jury in a criminal trial, and erroneous instructions will only invalidate an indictment upon a showing that the jury instructions were "so egregiously misleading or deficient that the fundamental integrity of the indictment process it-

self is compromised." *Inthavong*, 402 N.W.2d at 802. The State instructed the jury on the definition of hearsay, but did not mention hearsay's general inadmissibility other than to say that hearsay was not admissible except in limited circumstances. The State also failed to provide an instruction on the general inadmissibility of character evidence. Goelz fails to demonstrate how these instructions were "so egregiously misleading or deficient that the fundamental integrity of the indictment process itself [was] compromised." *See id.*

■ The State also read to the grand jury the jury instruction for the domestic abuse murder statute contained in 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 11.15 (5th ed.2007). It is not clear how reading this instruction to a grand jury would be a misstatement of the law, let alone compromise the integrity of the grand jury proceedings. We hold that Goelz has failed to meet the heavy burden required to overturn a grand jury indictment after his conviction beyond a reasonable doubt. We also hold that Goelz has failed to demonstrate how the State's instructions on the inadmissibility of hearsay, the lack of an instruction on the inadmissibility of character evidence, and the reading of the CRIMJIG 11.15 instruction for domestic abuse murder compromised the integrity of the grand jury process.

Affirmed.

ANDERSON, RUSSELL A., Chief Justice (concurring).

I concur in the affirmance of Goelz's conviction but write separately because I believe the OFP was admissible to impeach Goelz's claims of self-defense and peaceful character and to repair the credibility of the impeached State witness. At trial, Goelz's former spouse testified about incidents of domestic abuse that occurred during their marriage. She described one incident during an argument, after they had been drinking, when she was in the kitchen cooking. Goelz threw the food around the kitchen, tackled her as she was trying to flee, and choked her. He said he was going to kill her, snap her neck, and shoot her and her children and anyone who had ever crossed his path. She testified that this incident led to the OFP that ordered Goelz to participate in an anger management program.

In testifying on his own behalf, Goelz denied the incidents of domestic abuse described by his former spouse during direct examination. With regard to the OFP incident, he said that they were in the kitchen arguing when she started throwing glasses around. He testified that she grabbed a knife from the kitchen sink, waved it around and stabbed a stereo speaker. After that, he "grabbed a hold of her, kind of like around her neck and tried to subdue her to take the knife away from her so [he] didn't get stabbed." He testified that he agreed to the OFP, telling the judge "that's fine." Goelz called several character witnesses who testified as to his peaceful and truthful disposition and also as to the abusive and untruthful disposition of his former spouse.

I believe the foregoing permitted admission of the OFP to show that it was Goelz's former spouse who was the petitioner on that document and that it was Goelz, and not his former spouse, who had the anger management issues. *See* 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:85 (3d ed.2007) (explaining impeachment by contradiction). Exclusion of the OFP, in my view, would have left the jury with an incomplete and perhaps even distorted picture of what had occurred. Further, the OFP evidence had a bearing on a matter of substance. That

incident was part of a pattern of domestic violence that ultimately ended in the death of Goelz's girlfriend, with Goelz shooting her as she retreated to the basement, following her downstairs and shooting her again as she crouched under the pool table.

As for the admission of the evidence in the State's case-in-chief, I believe that was not inappropriate. Ordinarily impeachment is accomplished on cross-examination or in rebuttal. But courts also "disfavor the deliberate tactic of 'lying in the weeds' in anticipation of an ambush, and it is within a trial court's discretion to exclude rebuttal if it concludes that the prosecution has acted unfairly." *United States v. Calvert*, 523 F.2d 895, 912 (8th Cir.1975). Here, in his opening statement, defense counsel outlined Goelz's defense, including evidence expected to rebut the State's OFP evidence. Under these circumstances, I do not believe the admission of the OFP through the State's witness amounted to improper bolstering. While I do share the concern that past-acts evidence warrants careful regulation under Minn. R. Evid. 403, given the defense in this trial, I would conclude that the admission of the OFP was not an abuse of discretion.

PAGE, Justice (concurring).

I join in the concurrence of Chief Justice RUSSELL A. ANDERSON.

GILDEA, Justice (concurring).

I join in the concurrence of Chief Justice RUSSELL A. ANDERSON.