*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-1719**

State of Minnesota,
Respondent,

vs.

John Christopher Winford,
Appellant.

**Filed September 2, 2014**
**Affirmed**
**Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-12-13348

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Halbrooks, Judge; and Hudson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges his convictions of first-degree burglary, felony stalking, domestic assault, and fifth-degree assault. Appellant argues that his convictions must be

reversed because the district court abused its discretion by admitting evidence of his prior similar conduct against a domestic-abuse victim. Appellant also argues that his first-degree burglary conviction must be reversed because the district court erroneously instructed the jury in a manner that allowed it to return a verdict that was not unanimous. We affirm.

## FACTS

Appellant John Winford has a long history of domestic violence against P.J., who is his ex-girlfriend and the mother of his children. In 2012, the parties were not living together, nor were they in a romantic relationship. On April 23, 2012, P.J. was at home cooking with her children and two friends, W.O. and A.B. Appellant entered P.J.'s home without consent and used the restroom. P.J. told appellant to leave the home, and the two started arguing. The argument escalated, and appellant became physically aggressive. P.J. testified that appellant punched her, hit her in the head, threw her down, and kicked her when she tried to get up. When W.O. attempted to stop appellant, he attacked her, hitting her with his fist. J.P., who is P.J.'s daughter and 11 years old at the time, also tried to stop appellant by jumping on him and hitting him. J.P. testified that appellant threw her off of him and slapped her, causing her to fall.

By the time that police arrived, appellant was no longer at the home. Following investigation, appellant was charged with (1) first-degree burglary, (2) felony pattern of stalking of P.J., (3) domestic assault against P.J., (4) fifth-degree assault against W.O., and (5) fifth-degree assault against J.P. The case was tried to a jury.

2

P.J. testified at trial about her relationship with appellant. She stated that appellant first became physically abusive—punching, grabbing, and fighting her—when she was pregnant with their first child. P.J. testified that there had "been times where pictures had been taken from police calls with bust[ed] mouths, nose bleeding, stuff like that." She also testified about appellant's 2007 and 2009 convictions of domestic assault against her. She described the 2009 incident, stating that appellant "jumped on" her, "grabbed [her] by [her] neck and threw [her] down on the ground and . . . dragged [her]."

Sergeant Franklin Ellering, who was responsible for investigating the incident that occurred on April 23, also testified at trial. He testified that through his investigation he learned that appellant had been convicted of domestic assault in 2007 and again in 2009. As a condition of his 2009 sentence, appellant was to have no contact with P.J. But in 2010, appellant was convicted of violating a domestic no-contact order.

After the witness testimony concluded, the district court instructed the jury on the law relating to appellant's charges. In regard to first-degree burglary, the district court instructed that

> [t]he statutes of Minnesota provide that whoever enters a building without the consent of the person in lawful possession and assaults another within the building or on the building's appurtenant property is guilty of a crime.
> The elements of burglary in the first-degree are:
> First, the defendant entered a building without the consent of [P.J.] or refused to leave when asked.
> Second, the defendant assaulted [P.J.], [W.O.] or [J.P.] within the building or on the building's appurtenant property.
> Third, the defendant's act took place on April 23rd in Hennepin County.
> If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you

3

find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

The jury found appellant guilty of first-degree burglary, felony pattern of stalking, domestic assault of P.J., and fifth-degree assault of W.O. Appellant was found not guilty of fifth-degree assault of J.P. This appeal follows.

## DECISION

### I. Jury Instructions

Appellant challenges the district court's jury instructions related to first-degree burglary. "Generally speaking, an appellate court will not consider an alleged error in jury instructions unless the instructions have been objected to at trial." *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). When there is no objection made at trial, as is the case here, we apply the plain-error test set forth in *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001). Under this test, the challenging party must show: (1) error, (2) that is plain, (3) that affects the party's substantial rights. *Griller*, 583 N.W.2d at 740. If all three prongs are satisfied, we then determine whether the error must be addressed to ensure the fairness and integrity of the judicial proceedings. *Id.*

We review the district court's jury instructions to determine whether they "fairly and adequately explain the law." *State v. Vance*, 734 N.W.2d 650, 656 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). "[J]ury instructions must define the crime charged and explain the elements of the offense to the

4

jury." *Vance*, 734 N.W.2d at 656. An instruction that materially misstates the law constitutes error. *State v. Caine*, 746 N.W.2d 339, 353 (Minn. 2008).

In order to analyze the accuracy of the district court's instructions, it is necessary to examine the elements of the first-degree burglary statute at issue. *See State v. Pendleton*, 567 N.W.2d 265, 268 (Minn. 1997). Minnesota's first-degree burglary statute states that whoever "enters a building without consent and commits a crime while in the building, either directly or as an accomplice, commits burglary in the first degree . . . if: . . . (c) the burglar assaults *a person within the building* or on the building's appurtenant property." Minn. Stat. § 609.582, subd. 1(c) (2012) (emphasis added).

Appellant argues that the district court erred by instructing the jury that he was guilty of first-degree burglary if the jury found that "[he] assaulted [P.J.], [W.O.] or [J.P.] within the building or on the building's appurtenant property." Appellant argues that this instruction allowed the jury to return a verdict that was not unanimous because the jury was not required to agree on who the victim of the assault was.

Under the plain language of Minn. Stat. § 609.582, subd. 1(c), the district court's jury instruction was not misleading, confusing, or a misstatement of the law. The statute requires the state to prove that a burglar assaulted "a person within the building." *Id.* Therefore, if appellant assaulted any person while in P.J.'s home, he would have assaulted "a person within the building." Moreover, "unanimity is not required with respect to the alternative means or ways in which the crime can be committed." *State v. Begbie*, 415 N.W.2d 103, 106 (Minn. App. 1987) (quotation omitted) (affirming

5

defendant's terroristic threats conviction even though the jury may not have agreed on which victim the defendant intended to terrorize), *review denied* (Minn. Jan. 20, 1988).

The verdict indicates that the jury agreed on the ultimate conclusion that appellant had assaulted "a person" in the home after he had entered it without consent. Because the statute merely requires the state to prove that appellant assaulted "a person" within the home, the district court did not err in its jury instruction. As a result, we need not address whether appellant's substantial rights were unfairly affected by this instruction. *See State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007) (noting that where a defendant fails to establish one factor of the plain-error test "we need not consider the other factors").

## II.     Similar-Conduct Evidence Under Minn. Stat. § 634.20 (2012)

Appellant argues that the district court erred by allowing the jury to hear improper propensity evidence of his past domestic-assault-related convictions involving P.J. In general, evidence of prior crimes or bad acts, known as *Spreigl* evidence, is not admissible as character evidence to show that the person acted in conformity with that character. Minn. R. Evid. 404(b); *see generally State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). But under Minn. Stat. § 634.20,

> [e]vidence of similar conduct by the accused against the victim of domestic abuse . . . is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Similar-conduct evidence is admissible to "demonstrate the history of the relationship between the accused and the victim of domestic abuse" and to place the offense in the

appropriate context. *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008); *see also State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004).

We review a district court's decision to admit similar-conduct evidence under Minn. Stat. § 634.20 for an abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008). A district court may admit this evidence if the conduct underlying the current charge qualifies as "domestic abuse" as defined in Minn. Stat. § 518B.01, subd. 2 (2012). *See State v. Barnslater*, 786 N.W.2d 646, 651 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010). "Domestic abuse" means, among other things, physically harming, assaulting, or inflicting fear of imminent physical harm, injury or assault against a family or household member. Minn. Stat. § 518B.01, subd. 2(a)(1), (2). A "family or household member" includes persons who have a child in common. Minn. Stat. § 518B.01, subd. 2(b)(5). Appellant and P.J. have children in common. Because the state alleged that appellant inflicted physical harm on P.J., P.J.'s testimony qualifies for admission under section 634.20.

We must next address whether the district court abused its discretion by determining that the probative value of this evidence substantially outweighed its danger of unfair prejudice. *McCoy*, 682 N.W.2d at 159. Appellant argues that testimony from P.J. and Sergeant Ellering had minimal probative value and was unfairly prejudicial. Specifically, appellant asserts that details relating to his prior assaults were not fully discussed, and "without more detail, [the testimony did] not illuminate the relationship between [P.J.] and [appellant]."

7

"When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted). On this record, we cannot conclude that the admission of similar-conduct evidence gave the state an "unfair advantage."

This evidence was highly probative. Appellant faced multiple charges at trial. He was charged with burglary, assault, and felony pattern of stalking P.J. For the state to prove that appellant was guilty of a pattern of stalking conduct, it needed to show that he engaged in two or more acts within a five-year period of conduct that he knew or had reason to know would cause P.J. "to feel terrorized or to fear bodily harm" and that she in fact felt this way. Minn. Stat. § 609.749, subd. 5(a)(b) (2012). Evidence about appellant's past assaults against P.J. supported a conclusion that P.J. was either terrorized or feared bodily harm by appellant's conduct on April 23, in addition to establishing a "pattern." Moreover, "[e]vidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *Lindsey*, 755 N.W.2d at 756 (quotation omitted). Similar-conduct evidence also has significant probative value in assisting the jury to judge witness credibility. *Id.* at 757.

Because the probative value of this evidence substantially outweighed the danger of any unfair prejudice, the district court properly exercised its discretion by allowing evidence of appellant's prior domestic assaults to be heard by the jury.

Appellant also argues that the district court's error in admitting similar-conduct evidence "was compounded by a lack of cautionary instruction." During the prosecutor's cross-examination of appellant, the district court instructed the jury that it could use appellant's "other convictions . . . for any purpose." The district court included a similar instruction in its final instructions to the jury. The state did not respond to this argument in its brief but based on our review of the record, defense counsel objected to the timing but not the substance of the instruction.

Typically, "an appellate court will not consider matters not argued to and considered by the district court." *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). And here, appellant has failed to provide any legal authority in support of his assertion that this instruction was in error. Appellant has also failed to address how this jury instruction affected his substantial rights. We will refuse to consider propositions that are unsupported by legal argument or authority "unless prejudicial error is obvious on mere inspection." *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (quotation omitted). Because our review of the record reveals no discernible prejudice to appellant, we conclude that this alleged error does not warrant reversal of appellant's convictions.

## III. Appellant's Pro Se Arguments

In his pro se supplemental brief, appellant argues that the district court erred by not admitting his electricity bill and phone records into evidence. As a corollary, he also asserts that he received ineffective assistance of counsel because his attorney did not offer these exhibits. The relevance of the records is unclear, and, in addition, appellant

does not cite any legal authority.  This court "will not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority."  *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008).

**Affirmed.**