*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2322**

State of Minnesota,
Respondent,

vs.

Manuel Hernandes Ayala,
Appellant.

**Filed December 22, 2014
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-13-1744

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Worke, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant challenges his convictions of second-degree and third-degree assault, arguing that (1) there is insufficient evidence to support a conclusion that appellant

inflicted substantial bodily harm, (2) the district court erred in admitting opinion testimony, and (3) the district court erroneously instructed the jury. We affirm.

**FACTS**

In the early morning hours of September 29, 2012, appellant Manuel Hernandes Ayala and his girlfriend, J.M., were drinking alcohol at their apartment while babysitting J.M.'s granddaughter. There is conflicting testimony about what happened next.

J.M. testified at trial that, after arguing with appellant, she went into the bedroom to try to sleep. J.M. testified that appellant came into the bedroom, struck her twice in the back of the head with a glass object, and then left the bedroom. J.M. testified that she realized she was bleeding from the back of her head and she called 911. The 911 call was admitted as evidence. It corroborated most of J.M.'s testimony.

Appellant testified that he attempted to stop J.M. from smoking crack cocaine. She became upset with him and began throwing things at him, including a perfume bottle, which he ducked to avoid, and which ricocheted and struck J.M. in the back of her head. Appellant testified that J.M. called the police and that he then walked outside and smoked a cigarette while waiting for police to arrive. He testified that he let the police into the building when they arrived, and he then left the area.

It is undisputed that, after J.M. called 911, the operator dispatched police officers and an ambulance to the apartment. Officer Sokhom Klann, one of the two officers to respond, testified that when he arrived he did not see anyone smoking outside the apartment building, that the door to the building was unlocked, and that he and the other officer entered the building without assistance from anyone. Officer Klann testified that,

2

when he located J.M. in the apartment, he saw blood on her hands and in her hair and that she was bleeding from the back of her head. J.M. admitted to him that she had been drinking alcohol. Officer Klann observed that J.M. had red, bloodshot eyes, but also observed that she was not stumbling or slurring her words. Officer Klann also testified that he only spoke with J.M. for approximately five minutes before she left with the paramedics because his "biggest concern was to get paramedics there to treat her head injury."

Dr. Christopher Wall, the emergency room doctor at Fairview Riverside Medical Center who treated J.M. on September 29, 2012, testified that J.M. lost approximately 250 milliliters (8.2 ounces) of blood from the laceration on her head. He testified that J.M. had a six- to seven-inch hematoma ("basically blood collection or bruise underneath the scalp") on the left back side of her head and a one-centimeter laceration in the center of the hematoma. Dr. Wall testified that J.M.'s head swelled at least one-half centimeter. A CT scan revealed no injury to J.M.'s brain or any skull fracture(s). However, Dr. Wall testified that "[a]nyone with a head injury is presumed to have a concussion," and J.M. complained of a headache, which Dr. Wall testified was an indication of a mild concussion. While Dr. Wall did not then diagnose J.M. with a concussion, he testified that he gave her precautionary instructions, including limiting her physical activity.

Appellant was initially charged with second-degree assault with a deadly weapon inflicting substantial bodily harm in violation of Minn. Stat. § 609.222, subd. 2 (2012). The state orally amended the complaint at trial to add one count of third-degree assault resulting in substantial bodily harm in violation of Minn. Stat. § 609.223, subd. 1 (2012).

The case was tried to a jury. The district court instructed the jury on the two charges, each with one lesser-included offense: (1) second-degree assault with a dangerous weapon inflicting substantial bodily harm and second-degree assault with a dangerous weapon, as a lesser-included offense, and (2) third-degree assault inflicting substantial bodily harm and fifth-degree assault, as a lesser-included offense.

When instructing the jury, the district court stated: "The order in which the instructions are given is of no significance. You are free to consider the issues in any order you wish. I have not intended by anything I say in these instructions to indicate that you must consider the issues in any particular order." After closing arguments, the district court described the multiple jury verdict forms for the jury, stating:

> If you find the defendant not guilty, then you go to the included offense. In other words, if you find the defendant guilty, you don't go to the included offense. . . . If you find the defendant not guilty, then you go to the included offense of assault in the second degree, dangerous weapon.

No objection was made to the instruction. The jury returned two verdict forms: one finding appellant guilty of second-degree assault with a dangerous weapon inflicting substantial bodily harm and the other finding appellant guilty of third-degree assault. The jury returned neither of the lesser-included-offense verdict forms. The district court sentenced appellant to 45 months in prison. This appeal followed.

## DECISION

Appellant argues that the evidence supporting the substantial bodily harm element of the second-degree and third-degree assault convictions, is insufficient. When considering a claim of insufficient evidence, we analyze the record to determine whether

4

the evidence, viewed in the light most favorable to the conviction, is sufficient to allow the fact-finder to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). A conviction will not be reversed when the jury, giving due regard to the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, could have found the defendant guilty of the charged offense. *State v. Clark*, 755 N.W.2d 241, 256 (Minn. 2008).

To find appellant guilty of second-degree assault, the jury was required to find that (1) appellant assaulted J.M., (2) with a dangerous weapon, and (3) inflicted substantial bodily harm. Minn. Stat. § 609.222, subd. 2 (2012). To find appellant guilty of third-degree assault, the jury was required to find that (1) appellant assaulted J.M. and (2) inflicted substantial bodily harm. Minn. Stat. § 609.223, subd. 1 (2012). Substantial bodily harm is defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member." Minn. Stat. § 609.02, subd. 7a (2012).

There was significant testimony at trial regarding the nature of J.M.'s injuries. J.M. testified that she was hit in the back of her head twice, causing bleeding and a laceration on the back of her head. Dr. Wall testified at trial that he estimated J.M. lost approximately 250 milliliters of blood, and her one-centimeter laceration required two staples to stop the bleeding. Further, he testified that J.M. had a six- or seven-centimeter hematoma on the back of her head that swelled at least half a centimeter from the back of J.M.'s head. While Dr. Wall testified that he did not diagnose J.M. with a concussion, he

5

testified at length about the difficulty of diagnosing concussions, especially in the immediate aftermath of a head injury. J.M. testified that she had recurring headaches after the incident, which Dr. Wall testified could be consistent with a mild concussion. Appellant himself testified that J.M. was struck with a perfume bottle, causing the back of her head to bleed. He claimed that she threw the perfume bottle, causing her own injury. The jury believed J.M. and found appellant guilty. *See Clark*, 755 N.W.2d at 256 ("we view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict" (quotation omitted)). All of this evidence supports the jury's finding that appellant inflicted substantial bodily harm on J.M. The verdict is amply supported by the evidence.

Appellant also argues that testimony from Sergeant Sharon Carpenter and Dr. Wall regarding J.M.'s injury was inadmissible because that testimony embraced legal conclusions and addressed the ultimate issue the jury was to decide. Whether opinion testimony that goes to an ultimate issue should be admitted is a matter left to the discretion of the district court. *State v. Sontoya*, 788 N.W.2d 868, 872 (Minn. 2010). Because appellant did not object to this testimony at trial, we review the admission of that testimony under the plain-error standard, requiring the defendant to show (1) error; (2) that was plain; and (3) that affected appellant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998); *see also State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998) (stating that failure to object to the instructions results in plain-error review). To be plain, the error must be obvious or clear. *Johnson v. United States*, 520 U.S. 461, 467, 117 S. Ct. 1544, 1549 (1997). "If a defendant fails to establish that the claimed error

6

affected his substantial rights, we need not consider the other factors." *State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007).

During trial, the prosecutor asked Dr. Wall, "[W]ould you agree that [J.M.] suffered a significant or substantial injury to the back of her head?" Dr. Wall agreed and offered an explanation of the injury and how he treated it differently than he would have if it were a less serious injury.[1] Both the prosecutor and trial counsel questioned Dr. Wall extensively on the difficulty of diagnosing concussions and symptoms that might accompany a concussion. Sergeant Carpenter also testified that she recommended the prosecutor charge appellant with second-degree assault "because of the injuries" to J.M., implying that she believed the injuries were significant and amounted to substantial bodily harm. Sergeant Carpenter also testified that, in her experience, glass objects, such as a perfume bottle, could inflict substantial bodily harm.

Both attorneys elicited testimony from Dr. Wall regarding the issue of substantial bodily harm. "[A] party cannot assert on appeal an error that he invited or that could have been prevented at the district court." *State v. Carridine*, 812 N.W.2d 130, 142 (Minn. 2012). In *Goelz*, the appellant argued that it was plain error to admit evidence of his faked suicide attempt. 743 N.W.2d at 258. However, the supreme court found that, "[n]ot only did Goelz fail to object to this testimony, [but also that] he affirmatively developed and expanded the evidence of his faked suicide during his own testimony." *Id.*

---

[1] Specifically, Dr. Wall testified: "[I]f it was just a hematoma you could have placed ice. But generally head injuries where there is bleeding will continue to bleed. . . . So simply holding pressure over the course of several hours may stop the bleeding if you're in the field, but generally in that sort of acute setting it is better just to have the staples or stitches put in in order to seal that wound and prevent further bleeding."

The supreme court concluded that the appellant "waived any error relating to the admission of the faked suicide attempt because he invited this error." *Id.* Similarly here, appellant failed to object to the opinion testimony from Dr. Wall and attempted to leverage the opinion testimony to his advantage at trial. He cannot now argue that the district court plainly erred in admitting this testimony. And the unobjected-to testimony of Sergeant Carpenter was a fleeting reference to the charges she suggested to the prosecutor. The district court properly instructed the jury that the charges against appellant are not evidence, and this reference to the charges was not plainly erroneous.

Moreover, even if there was plain error, it did not affect appellant's substantial rights. A party seeking appellate relief based on a claim of plain error bears the "heavy burden" of proving that the error was reasonably likely to have significantly affected the verdict. *Griller*, 583 N.W.2d at 741. As discussed above, there was significant evidence at trial regarding the nature of J.M.'s injuries. Even without the testimony from Sergeant Carpenter and Dr. Wall concerning the severity of her injuries, there is ample evidence to support the jury's conclusion that appellant inflicted substantial bodily harm on J.M. aside from these unobjected-to slivers of testimony. Appellant has not demonstrated a reasonable likelihood that the testimony challenged on appeal significantly affected the verdict.

Appellant also argues that the district court improperly instructed the jury that it need not consider lesser-included offenses if it found appellant guilty of the charged offense. Because there was no objection to this instruction at trial, we again review for plain error, *State v. Scruggs*, 822 N.W.2d 631, 642 (Minn. 2012), using the same three-

8

step test, *Griller*, 583 N.W.2d at 740. Should we determine that plain error affecting appellant's substantial rights has occurred, we consider whether the error should be addressed "to ensure the fairness and the integrity of the judicial proceedings." *Id.*

District courts have broad discretion and latitude in selecting the language for jury instructions, and instructions must be reviewed as a whole. *Gulbertson v. State*, 843 N.W.2d 240, 247 (Minn. 2014). The supreme court has held that it is plain error for the district court "to suggest the order in which the jury should consider the charges." *State v. Prtine*, 784 N.W.2d 303, 316 (Minn. 2010). Minnesota's criminal jury instruction guides provide guidance on the jury instructions to be given when lesser-included offenses are presented to the jury. *See* 10 *Minnesota Practice,* CRIMJIG 3.20 (2013) (providing draft instructions for lesser crimes). The comment for CRIMJIG 3.20 states: "The court should be careful not to indicate any order in which the crimes should be considered. It should not instruct the jury to consider the lesser crimes only if it finds the defendant not guilty of the charged offense." CRIMJIG 3.20 cmt. In *Prtine*, the supreme court found that the district court provided "complete and proper" jury instructions regarding the charges and lesser-included offenses. 784 N.W.2d at 316. However, upon a question from the jurors during deliberations, the district court cited CRIMJIG 3.20 language and "also instructed the jury that it should proceed 'down the line' until it arrived at a guilty verdict and after arriving at a guilty verdict it was not required to consider the remaining offenses." *Id.* at 317. The supreme court found that, while this supplemental instruction was plain error, it did not affect the defendant's substantial rights given the initial complete and proper instructions. *Id.*

9

Here, the district court instructed the jury that: "If you find the defendant not guilty, then you go to the included offense. In other words, if you find the defendant guilty, you don't go to the included offense." This was error and the error is plain.

To determine whether appellant's substantial rights were affected, we review whether the error was prejudicial and affected the outcome of the case. *Griller*, 583 N.W.2d at 741. While the district court plainly erred in the specific instruction about the order in which to review the verdict forms, the district court, after reading the elements for each greater charge, also stated: "If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty [of the greater charge]." Appellant argues that the jury would not have found him guilty of either charge of which he was ultimately convicted had the district court properly instructed the jury. But the instructions, when reviewed as a whole, properly directed the jury to find appellant not guilty of any offense as to which the state had not proved each element beyond a reasonable doubt. Additionally, the district court instructed the jury that it was giving the instructions for each crime "in no particular order," and properly defined the elements of both the charged offenses and lesser-included offenses. The erroneous instruction had no effect on the outcome of the case. It did not affect appellant's substantial rights.

We also note that appellant's principal defense theory at trial was that he did not inflict the harm on J.M., and that she caused her own injury by throwing a glass perfume bottle at appellant, which ricocheted and struck her. Appellant did not argue that he was guilty of the lesser-included offenses rather than the charged offenses. He argued that he was guilty of no crime at all. This also supports our conclusion that the erroneous

10

instruction had no significant effect on the jury's verdict. The jury accepted J.M.'s testimony that her injuries were caused by appellant. And the evidence supporting the jury's acceptance of J.M.'s testimony was strong.

In sum, we conclude that appellant's convictions for second-degree and third-degree assault are amply supported by the evidence. The admission of unobjected-to opinion testimony was not plainly erroneous, and did not affect appellant's substantial rights. And appellant has not borne his heavy burden of demonstrating that the district court's erroneous jury instruction affected his substantial rights.

**Affirmed.**