**STATE of Minnesota, Respondent,**

v.

**Frank E. HOLMES, Appellant.**

**No. A04–1134.**

Court of Appeals of Minnesota.

Aug. 2, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Donald F. Ryan, Crow Wing County Attorney, Bruce F. Alderman, Assistant County Attorney, Brainerd, MN, for respondent.

John M. Stuart, State Public Defender, Benjamin J. Butler, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by DIETZEN, Presiding Judge; STONEBURNER, Judge; and HUDSON, Judge.

## OPINION

STONEBURNER, Judge.

Appellant Frank Eugene Holmes challenges the sufficiency of the evidence to support his conviction of first-degree driving while intoxicated and argues that the district court erred in ordering his previously imposed sentence for gross-misdemeanor DWI to run consecutive to the subsequently imposed felony DWI sentence. Appellant also asserts that the district court erred by using a criminal-history score of five, including one custody-status point, in his felony sentencing.

## FACTS

Appellant's father, Frank Wayne Holmes ("father"), testified that on the day of appellant's arrest, appellant came to father's home with a friend. Father called 911 at about 4:00 p.m. because appellant was causing a disturbance. Father testified that appellant acted "ornery" when he drank to excess. Although father did not witness appellant drinking alcohol on that day, he testified that he believed appellant was drunk because "I could smell it and see it...." Appellant and the friend drove away from father's home in a pickup truck while father was on the phone with 911.

Jonathan Davis testified that he was driving on Highway 210 just before 5:00 p.m. when he saw a pickup truck driving "very dangerously ... and kind of scary." He watched the truck as it "whizzed by ... then ... almost ran another vehicle off into the ditch ... and was continuing down the road at a high rate of speed." Davis called 911 and gave the dispatcher the location and description of the truck. Davis followed the truck while he was on the phone with 911 and watched as the truck crashed into a minivan at the intersection of Fourth and Washington. Davis saw the driver as he was pulled off or out of the pickup truck by officers and "dragged" to the squad cars. Davis identified appellant at trial as the person he thought was the driver. A recording of Davis's 911 call was played for the jury.

Donna Bzdok, the minivan driver, testified that she was driving east on Washington (Highway 210), shortly before 5:00 p.m. She heard a noise that sounded like a "squeal" and looked in her rearview mirror. "[I]t looked like a car had gone to the right a little bit and hit the curb or pulled in front of someone." She continued to watch in her mirror and saw the truck as it kept "veering to the right," while the driver was moving as if he was "some kid jamming to music." As she approached Fourth Street, the light turned red, she stopped, and the truck collided with her minivan.

Bzdok got out of her van and noticed police cars pulling up. She saw the driver as "he was getting out of his truck, and he fell back into his truck, and then when he finally caught his balance and got out and slammed the door, he staggered around." She testified that appellant fell to the ground and "was having trouble standing up ... he sort of kept falling over the car." When asked if she could identify the driver at trial, Bzdok indicated appellant and stated, "I think it's the gentleman in the blue shirt."

Brainerd police officer Corky McQuiston was dispatched in response to the 911 calls. He observed the pickup as it rear-ended the minivan. He knew appellant by name from previous encounters and identified appellant as the driver of the truck. He saw appellant get out of the truck and have "difficulty standing ... [s]waying, wobbling, leaning up against the truck to maintain his balance." McQuiston testified that he asked appellant what happened and "all he could really do was mumble and swear." McQuiston testified that appellant was "combative and resistive," he had an "obvious strong odor of alcoholic beverage coming from him, his balance, his slurred speech ...," all of which led the officer to believe appellant

was intoxicated. He arrested appellant but did not request field sobriety tests. McQuiston testified that such a request "would have been pointless ... because of [appellant's] level of uncooperation" and inability to communicate. Appellant refused to take a preliminary breath test. McQuiston, who had 16 years of experience and had stopped more than 100 people for DWI, testified that, at the time of appellant's arrest, he "felt [appellant] was extremely drunk." McQuiston searched the truck after it was impounded and found unopened cans of beer and a small bottle of liquor.

The implied-consent advisory was read to appellant at the jail, and appellant responded to each question with a profanity or slurred, incomprehensible speech. He refused testing. A videotape of the reading of the advisory was played for the jury.

On cross-examination, McQuiston testified that the truck's windshield was cracked on the passenger side and he assumed the passenger had hit his head, because of the location of the crack and the absence of any injury to appellant's head.

Appellant was convicted of felony DWI under Minn.Stat. § 169A.24, subd. 1(1) (2002), and was committed to the Department of Corrections for 66 months, based on a criminal-history score of 5, including one custody-status point, to be served consecutive to a previously imposed but stayed one-year gross-misdemeanor DWI sentence. The day after appellant's felony sentencing, the district court revoked appellant's probation in the gross-misdemeanor matter and executed the one-year sentence "consecutive to the previously addressed file." This appeal followed.

### ISSUES

I.    Is the evidence sufficient to support appellant's conviction?

II. Did the district court err by making a prior sentence consecutive to the current sentence or by using a wrong criminal-history score in determining the duration of appellant's sentence?

III. Was appellant's Sixth Amendment right to jury trial violated under *Blakely* when the district court determined the existence of a custody-status point and enhanced appellant's sentence accordingly?

## ANALYSIS

### I. Sufficiency of evidence

When considering a claim of insufficient evidence, a reviewing court's only inquiry is whether, on the facts in the record and legitimate inferences to be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988). This review is limited to a careful analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the fact-finder to reach the verdict that it did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). It must be assumed that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Wahlberg,* 296 N.W.2d 408, 411 (Minn. 1980).

■ Appellant argues that because there were no eyewitnesses to his consumption of alcohol and he refused testing, evidence of his intoxication, which consists of eyewitness accounts of his condition and behavior, is circumstantial and in this case insufficient to prove that he was under the influence of alcohol when he drove his pickup truck into the back of a van at an intersection in front of a police officer.

We disagree. *See State v. Stokes,* 354 N.W.2d 53, 56 (Minn.App.1984) (rejecting argument that similar observations were only circumstantial evidence of his intoxication and stating that observations of witnesses who testified that the defendant was "unsteady," smelled of alcohol, etc., are direct evidence of the conditions they observed).

■ In this case, four eyewitnesses opined that appellant was intoxicated, based on direct observations of appellant. Appellant's father testified that he has observed his son consume alcohol in the past and knows what effect consumption of too much alcohol has on appellant. He testified that he observed his son for five to ten minutes prior to making the 911 call and told the dispatcher that appellant was drunk, based on smelling alcohol on appellant and his observations of appellant's behavior. The officer who testified about appellant's intoxication had training and experience in detecting intoxication. The evidence of appellant's intoxication is more than sufficient to support the verdict even if the evidence is characterized as only circumstantial. In order to reverse a conviction based on circumstantial evidence, the evidence must be as consistent with some other rational hypothesis of innocence as it is consistent with guilt. *State v. Hughes,* 355 N.W.2d 500, 502 (Minn. App.1984), *review denied* (Minn. Jan. 2, 1985). In this case, no evidence supports appellant's assertion that the odor of an alcoholic beverage was coming from someone other than appellant or that his behavior was due to a head injury or due to his being a "terrible driver and belligerent scofflaw with a major attitude problem."

### II. Sentencing challenges

■ Appellant asserts that the district court erred by making his previously imposed gross-misdemeanor sentence consec-

utive to the sentence in this case, used the wrong criminal-history score, and violated *Blakely* by imposing a custody-status point. Appellant's challenges to the consecutive sentence and criminal-history score involve interpretation of the sentencing guidelines, a question of law subject to de novo review. *State v. Watkins*, 650 N.W.2d 738, 741 (Minn.App.2002).

Appellant did not raise any issue about his sentencing at the district court. Generally, this court does not decide issues that are raised for the first time on appeal. *State v. Roby*, 463 N.W.2d 506, 508 (Minn. 1990). But Minn. R.Crim. P. 31.02 provides that plain error may be reviewed, although not brought to the attention of the trial court, and we have previously approved review of alleged sentencing errors raised for the first time on appeal for "plain error." *See State v. Thomas*, 467 N.W.2d 324, 327–28 (Minn.App.1991). In the interest of justice, we address appellant's arguments.

### a. Consecutive sentencing

■ It is undisputed that appellant was on probation under a stay of execution of a one-year sentence for a gross-misdemeanor DWI at the time he committed the current offense. Minn.Stat. § 169A.28, subds. 1(1)-(2) (2002) mandates that the sentence for this felony DWI be consecutive to the prior sentence. The district court properly pronounced the felony sentence to be served consecutively to the previously imposed gross-misdemeanor sentence. The next day, however, at a revocation hearing in the gross-misdemeanor matter, the district court executed the gross-misdemeanor sentence and stated that this sentence would be consecutive to the felony sentence imposed the previous day.

The district court's statement that the gross-misdemeanor sentence would be consecutive to the felony sentence is error. *See State v. Klang*, 320 N.W.2d 718, 719 (Minn.1982) (stating that district court had no authority to order a previously imposed stayed-but-now-executed sentence to run consecutively to a subsequently imposed sentence). And the state concedes that the sentence for felony DWI must be consecutive to the sentence for gross-misdemeanor DWI in this case.

Minn. R.Crim. P. 27.03, subd. 9, allows the court to correct a sentence not authorized by law at any time, and the supreme court has held that an appellate court may correct an unauthorized sentence under the rule even though the issue was not raised before the trial court. *See State v. Hockensmith*, 417 N.W.2d 630, 632 (Minn. 1988). We therefore correct the sentence to vacate any reference to the gross-misdemeanor sentence being consecutive to the felony sentence and affirm that the felony sentence is consecutive to the gross-misdemeanor sentence.

### b. Criminal-history score

■ Appellant also argues that the district court used an incorrect criminal-history score to calculate his sentence. We agree. The guidelines provide that when consecutive sentencing is *presumptive*, a criminal-history score of one, or the mandatory minimum for the offense, whichever is greater, shall be used in determining the presumptive duration, and when consecutive sentencing is *permissive*, a zero criminal-history score, or the mandatory minimum for the offense, whichever is greater, shall be used in determining the presumptive duration. Minn. Sent. Guidelines II.F.[1] Minnesota Statutes § 169A.28,

---

**1.** We find no merit to the state's argument that the sentencing guidelines do not apply in this case because appellant's prior offense was a gross misdemeanor. The state accu-

subd. 1(1)-(2) is not referred to in the description of either *presumptive* or *permissive* consecutive sentences, but we nonetheless hold that this statutorily mandated consecutive sentence is not a departure from the guidelines, and, because it is mandatory, we hold that it is a presumptive consecutive sentence calculated using a criminal-history score of one. The district court therefore erred by calculating the duration of appellant's sentence using a criminal-history score of five.

The duration of appellant's sentence using a criminal-history score of one is 42 months (which is greater than the 36–month mandatory minimum sentence provided in Minn.Stat. § 169A.276, subd. 1 (2002)). A sentence of 42 months results in a further presumption under the guidelines that the sentence should be stayed. Minn. Sent. Guidelines II.E (stating that presumptive disposition for an offender sentenced for first degree (felony) driving while impaired is determined by the dispositional line on the Sentencing Guidelines Grid, and sentences for "cases contained in cells below and to the left of the line, [ ] should be stayed unless the offender has a prior conviction for a felony DWI").[2]

On this record, we cannot determine whether the district court would have executed a presumptively stayed sentence. Execution of the sentence would be a departure requiring stated reasons. We therefore vacate the 66–month sentence imposed and remand for re-sentencing consistent with this opinion.

### III. *Blakely* issue

■ Appellant argues that the assignment of a custody-status point violates *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because the district court, rather than a jury, made the finding that appellant was in custody. We rejected this argument in *State v. Brooks*, 690 N.W.2d 160, 163 (Minn.App.2004) (concluding that no purpose would be served by requiring a jury to make a finding of fact regarding the existence of a custody-status point and construing *Blakely* as recognizing that a jury need not make such a determination), *review granted* (Minn. Mar. 15, 2005).

Although *Blakely* does not prevent the district court from determining custody status, the sentencing guidelines still restrict the total criminal-history score for calculation of the duration of a presumptively consecutive sentence to one, so the existence of a custody-status point does not change the presumptive duration of appellant's sentence.

### DECISION

The evidence is sufficient to support appellant's conviction of felony DWI. Appellant's sentence is modified to clearly provide that the felony sentence is to be served consecutively to the previously imposed gross-misdemeanor sentence. *Blakely* does not require that a jury determine the custody status of a defendant, but mandatory consecutive sentencing under Minn.Stat. § 169A.28, subd. 1 (2002) is a presumptive mandatory sentence under

rately cites *State v. Kier*, 678 N.W.2d 672, 677 (Minn.App.2004), for the proposition that the guidelines do not apply to misdemeanor and gross-misdemeanor sentences. But the state has not cited any authority for the proposition that because the previous offense was a gross misdemeanor, the guidelines do not apply to this felony sentence. The guidelines refer to

"each offense sentenced consecutive to another offense" without requiring that the previous offense be a felony. Minn. Sent. Guidelines II.F.

2. Minn.Stat. § 169A.276, subd. 1(b) also provides that the statutory mandatory minimum sentence may be stayed.

the guidelines, requiring the duration of the sentence to be calculated using a criminal-history score of one. The 66–month sentence imposed by the district court is vacated, and the matter is remanded for sentencing consistent with this opinion.

**Affirmed in part, vacated in part, and remanded.**