Jerrell Michael BROWN, Appellant,

v.

STATE of Minnesota, Respondent.

A15-1402
A16-0648

Supreme Court of Minnesota.

Filed: May 24, 2017

See also 2009 WL 8651512, 2011 WL 8771468.

Jerrell Michael Brown, Stillwater, Minnesota, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

## OPINION

LILLEHAUG, Justice.

On March 8, 2010, a jury found appellant Jerrell Michael Brown guilty of first-degree murder committed for the benefit of a gang. We affirmed Brown's conviction on direct appeal, as well as the postconviction court's denial of his first petition for postconviction relief. *State v. Brown*, 815 N.W.2d 609 (Minn. 2012). The day before the postconviction statute of limitations expired (December 9, 2014), he filed his second petition. Over the next six months, he filed various addenda and attachments to his second petition. Brown also filed a third petition on October 23, 2015, wherein he raised additional claims and moved for discovery. By motion filed November 25, 2015, Brown also requested re-testing of certain trial evidence. The postconviction court denied both petitions and Brown's other requests without an evidentiary hearing, concluding that his claims were each untimely filed or procedurally barred, or failed on the merits. We affirm.

## FACTS

On August 29, 2008, Darius Miller was fatally shot outside a nightclub in downtown Minneapolis. After a police investigation, the State presented evidence against Brown to a grand jury, which indicted Brown on four counts of murder, all on an accomplice-liability theory: (1) first-degree murder, Minn. Stat. §§ 609.05, subd. 1 (2016), 609.185(a)(1) (2016); (2) first-degree murder committed for the benefit of a gang, Minn. Stat. §§ 609.05, subd. 1, 609.185(a)(1), 609.229, subd. 2 (2016); (3) second-degree intentional murder, Minn. Stat. §§ 609.05, subd. 1, 609.19, subd. 1(1) (2016); and (4) second-degree intentional murder committed for the benefit of a gang, Minn. Stat. §§ 609.05, subd. 1, 609.19, subd. 1(1), 609.229, subd. 2.

The case went to trial. The State presented evidence that a bullet casing found next to Miller was fired from the same firearm that Brown admitted to firing in connection with a June 2008 reckless-discharge conviction. The State also presented surveillance video from the nightclubs surrounding the murder scene, eyewitness testimony describing the shooter (matching Brown), testimony from two of Brown's fellow inmates at Hennepin County Jail that Brown had confessed to the murder, and more. In total, the State presented testimony from twenty-five witnesses: six Minneapolis Police Department officers, eight civilian eyewitnesses, four witnesses related to the 2008 reckless-discharge conviction, two inmates, two forensic experts, a medical examiner, a jail records custodian, and Miller's mother.

A jury found Brown guilty of all four counts of murder. The trial court convicted Brown of first-degree murder committed for the benefit of a gang.

Brown filed a direct appeal. He also filed his first petition for postconviction relief, which was denied, appealed, and consolidated by this court with his direct appeal. We affirmed Brown's conviction on direct appeal, as well as the postconviction court's denial of his first petition for postconviction relief. *Brown*, 815 N.W.2d at 622. Brown then filed a petition with the United States Supreme Court for a writ of certiorari, which was denied on December 10, 2012.

On December 9, 2014, Brown filed his second petition for postconviction relief. In that petition, Brown alleged that D.M.—a State witness who testified at trial that Brown confessed to the crime while the two were in Hennepin County Jail—had recanted.

On December 26, 2014, a Minneapolis Police Sergeant visited D.M. at the Faribault Correctional Facility to discuss the

alleged recantation. D.M. explained to the sergeant that Brown had written multiple letters threatening D.M. if he did not recant. D.M. also said that Brown's postconviction attorney had contacted D.M. and visited him in prison three times, and had coerced D.M. to provide written answers to a questionnaire that would help exonerate Brown. D.M. told the sergeant that he answered all of the questions as Brown's attorney instructed because D.M. was told that his answers were not legally binding. D.M. then told the sergeant that his trial testimony was the truth and signed a notarized affidavit to that effect.

The sergeant informed D.M. that the State had moved to vacate several plea agreements between D.M. and the State—in cases unrelated to the events surrounding Brown's case—wherein D.M. had promised to provide truthful testimony at Brown's trial. The sergeant told D.M. that the whole incident would hopefully be moot because D.M. was signing the notarized affidavit stating that D.M.'s trial testimony was the truth.

Over the next several months, Brown filed several documents raising claims that were not raised in his second petition for postconviction relief. On March 6, 2015, Brown filed an "Addendum to Petition for Postconviction Relief," dated February 12, 2015. In that addendum, Brown raised a new allegation that another State witness, A.A., provided false eyewitness testimony. On April 10, 2015, Brown filed a second addendum, this time raising new claims of ineffective assistance of trial and appellate counsel, and requesting discovery of surveillance video evidence from the trial. On April 15, 2015, Brown filed an affidavit from D.S. allegedly supporting Brown's claim regarding A.A. On June 5, 2015, Brown filed another affidavit, this one from L.J., allegedly supporting Brown's claim regarding A.A.

On July 23, 2015, the postconviction court denied all relief, including Brown's request for an evidentiary hearing. Brown appealed to this court, but the appeal was stayed on Brown's motion because he planned to file a third petition for postconviction relief.

On October 23, 2015, Brown filed his third petition for postconviction relief, raising new claims and expanding on other claims previously raised in the second petition and its addenda. Specifically, Brown alleged prosecutorial misconduct regarding the State's dealings with D.M., false testimony by the State's firearms expert at trial, and additional grounds for his claims of ineffective assistance of trial and appellate counsel. On November 25, 2015, he requested re-testing of bullets that had been found at the crime scene. The postconviction court again denied all relief, including his request for an evidentiary hearing.

Brown appealed to our court. We consolidated his appeals from the postconviction proceedings on his second and third petitions. We affirm.

## ANALYSIS

We review a district court's denial of a petition for postconviction relief and an evidentiary hearing for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (citation omitted) (internal quotation marks omitted). "We review a postconviction court's legal determinations de novo, and its factual findings for clear error." *Martin v. State*, 865 N.W.2d 282, 287 (Minn. 2015) (citing *Riley*, 819 N.W.2d at 167).

In determining whether an evidentiary hearing is required, a postconviction court considers the facts alleged in the petition as true and construes them in the light most favorable to the petitioner. *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012). The petition must allege "more than argumentative assertions without factual support." *Lynch v. State*, 749 N.W.2d 318, 320 (Minn. 2008) (citations omitted) (internal quotation marks omitted). "An 'evidentiary hearing is not required unless the petitioner alleges such facts which, if proved by a fair preponderance of the evidence, would entitle him or her to the requested relief.'" *Sutherlin v. State*, 574 N.W.2d 428, 436 (Minn. 1998) (quoting *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997)); *Roby v. State*, 547 N.W.2d 354, 356 (Minn. 1996). When the facts alleged in the petition conclusively establish that the petition is untimely filed under the postconviction statute of limitations, Minn. Stat. § 590.01, subd. 4(a)-(c) (2016), there is no need to hold an evidentiary hearing. *Taylor v. State*, 874 N.W.2d 429, 431 (Minn. 2016).

## I.

Brown argues that the district court abused its discretion when it denied his second petition for postconviction relief without holding an evidentiary hearing. According to Brown, he is entitled to postconviction relief because D.M. allegedly recanted his trial testimony. D.M. testified at trial that Brown confessed to the murder while in Hennepin County Jail awaiting trial. The State argues that, even if the facts alleged in the second petition were proven by a fair preponderance of the evidence at an evidentiary hearing, they fail to satisfy the second requirement of the *Larrison* standard.

A petitioner is entitled to a new trial due to witness recantation of trial testimony if:

(1) the court is reasonably well-satisfied that the testimony given by a material witness was false; (2) ... without the testimony, the jury might have reached a different conclusion; and (3) ... the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Williams v. State*, 692 N.W.2d 893, 896 (Minn. 2005) (citing *Opsahl v. State*, 677 N.W.2d 414, 422-23 (Minn. 2004)); *see also Larrison v. United States*, 24 F.2d 82, 87-88 (7th Cir. 1928), *overruled by United States v. Mitrione*, 357 F.3d 712, 717-18 (7th Cir. 2004) (modifying the *Larrison* standard). "The first two prongs of the *Larrison* standard are compulsory." *Caldwell v. State*, 853 N.W.2d 766, 772 (Minn. 2014).

Brown's claim, even if true, fails the second prong of *Larrison*. The absence of D.M.'s trial testimony does not support the notion that the jury might have reached a different conclusion. D.M. was only one of two jailhouse witnesses to testify that Brown had confessed to the murder. Moreover, the State presented overwhelming evidence establishing Brown's guilt through forensic evidence, eyewitness testimony, and surveillance videos. Given the cumulative nature of D.M.'s testimony and the strength of the State's case, D.M.'s alleged recantation does not satisfy the second prong of *Larrison*. Accordingly, the postconviction court did not abuse its discretion when it summarily denied Brown's second petition for postconviction relief on this claim.

## II.

Brown next argues that the State engaged in prosecutorial misconduct when it allegedly intimidated D.M. into withdrawing his alleged recantation. The State

responds that its motions to withdraw D.M.'s plea agreements were supported by the law and that it was Brown who improperly intimidated D.M.

As explained above, D.M. entered into plea agreements with the State in several unrelated cases that included the promise that he would provide truthful testimony in Brown's case. D.M. then testified at Brown's trial that Brown, while incarcerated with D.M., confessed to the murder. Brown alleged that D.M. recanted, based on answers to a questionnaire procured by Brown's attorney. If the answers to the questionnaire were true, D.M. would have violated a term of his plea agreements. "It is well settled that an unqualified promise which is part of a plea arrangement must be honored or else the guilty plea may be withdrawn." *Kochevar v. State*, 281 N.W.2d 680, 687 (Minn. 1979) (citing *Olness v. State*, 290 Minn. 198, 186 N.W.2d 706 (1971); *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)); *see State v. Williams*, 418 N.W.2d 163, 168 (Minn. 1988) ("A plea agreement is in many ways analogous to a contract whose terms will not be enforced to benefit a breaching party." (citations omitted)). Accordingly, the prosecutor's motions to vacate D.M.'s guilty pleas and plea agreements were not misconduct.

The sergeant also met with D.M. to investigate the alleged recantation. He notified D.M. of the motions to vacate and told D.M. that, if he did lie in Brown's trial, the State could not uphold the deals previously made. Those statements were not inaccurate. Thus, because the State's conduct in addressing D.M.'s alleged recantation did not constitute improper intimidation, *see Opsahl v. State*, 710 N.W.2d 776, 783 (Minn. 2006), the postconviction court did not abuse its discretion by denying Brown's claim.

## III.

We next consider Brown's argument that the postconviction court abused its discretion by denying the claim in his third petition that the State knowingly used false evidence at trial. The State's firearms expert, K.R., testified that a bullet casing from the scene of Miller's death matched a bullet casing from a firearm that Brown had possessed in connection with a reckless-discharge conviction from June 2008. Brown alleges that the State "produced and placed" this casing at the crime scene to frame him. He further claims that the postconviction court abused its discretion in denying his motions for re-testing of fired bullets found at the crime scene. Specifically, Brown requests re-testing of the bullet recovered from Miller's head, along with another fired bullet and several bullet fragments recovered from the crime scene.

K.R. tested four discharged bullet casings that were recovered from the scene of Miller's death. She determined that three were nickel and one was brass, and that the nickel casings had been fired by a different firearm than the brass casing. K.R. compared all four casings to a casing from the firearm at issue in Brown's 2008 reckless-discharge conviction. She concluded that the brass casing was fired from the same firearm that led to his 2008 reckless-discharge conviction.

K.R. also examined the two fired bullets and bullet fragments. She concluded that the two bullets were fired from different firearms. She also concluded that the bullet fragments could not be matched to the bullet recovered from Miller's head. K.R.'s examination of the fired bullets, the bullet fragments, and the bullet casings was peer-reviewed and confirmed by another firearms expert.

Brown alleges that the State, during its investigation of Miller's death, replaced a nickel casing with the brass casing to frame Brown. He developed this theory after watching an episode of the television show "The First 48," which covered law enforcement's investigation of Miller's death. Brown asserts that the casing depicted on the show was silver in color, i.e., nickel rather than brass. Further, Brown links the other fired bullet and bullet fragments to the nickel casings, in contradistinction to the brass casing and the bullet from Miller's head. He argues that re-testing the bullets and bullet fragments may reveal that the bullet from Miller's head is consistent with the other bullet and the bullet fragments.

The State responds that Brown's claim was untimely filed under the postconviction statute of limitations and fails on the merits. The State notes that colored photographs of the bullet casings were entered into evidence at trial. The State also notes that Brown has offered nothing more than unsubstantiated allegations and has not explained why re-testing the bullets and bullet fragments would provide any new or different information.

A petition for postconviction relief must be filed no more than two years after "an appellate court's disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(a)(2). A court may consider such a petition, notwithstanding the statute of limitations, if the petitioner alleges "newly discovered evidence . . . that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period . . . and establishes by a clear and convincing standard that the petitioner is innocent. . . ." *Id.*, subd. 4(b)(2).

■■■ A court may also consider a petition for postconviction relief, notwithstanding the statute of limitations, if "the peti-

tioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." *Id.*, subd. 4(b)(5). Under the interests-of-justice exception, the petitioner must identify "an injustice that delayed the filing of the petition." *Hooper v. State*, 888 N.W.2d 138, 142 (Minn. 2016). In *Hooper*, we held that the petitioner's argument did not "establish a valid interests-of-justice claim . . . because it relate[d] to the merits of [the] petition rather than the reason for the delay." *Id.* By contrast, we held in *Rickert* that a petitioner's otherwise untimely claim satisfied the interests-of-justice exception where the untimeliness was caused by a third party's dilatory conduct. *See Rickert v. State*, 795 N.W.2d 236, 238, 242 (Minn. 2011).

■■■ A claim based on the newly-discovered-evidence or interests-of-justice exception must be filed within two years after the claim arises. Minn. Stat. § 590.01, subd. 4(c). A claim arises when the petitioner knew, or should have known, of the claim giving rise to the exception. *Sanchez v. State*, 816 N.W.2d 550, 560 (Minn. 2012).

Brown's claim was untimely filed under Minn. Stat. § 590.01, subd. 4(a)(2). Brown was presented with color photographs of the shell casings at the time of trial; the silver coloration of the casing is apparent in the photograph, meaning he had sufficient information then to raise the claim. The United States Supreme Court denied his petition for a writ of certiorari on December 10, 2012. The statute of limitations began to run on that date and expired on December 10, 2014. Because Brown did not raise this claim until his third petition, which was filed on October 23, 2015, his claim is untimely. Therefore, for our court to consider his claim, Brown must meet the newly-discovered-evidence or interests-of-justice exceptions.

Brown's claim fails to meet the newly-discovered-evidence exception. The State produced color photographs of the casings at trial and, by our rules, the casings themselves were available for inspection by Brown and his counsel. Further, Brown fails to explain why re-testing the bullets and bullet fragments would provide any new or different information.

For similar reasons, Brown's claim also fails to meet the interests-of-justice exception. Nothing prevented Brown from raising the issue on direct appeal. Brown failed to allege facts which would establish an exception to the postconviction statute of limitations, even if proven by a preponderance of the evidence. Accordingly, we conclude that the postconviction court did not err when it summarily denied this untimely claim.

■ We also affirm the postconviction court's denial of Brown's motion for re-testing as facially insufficient. Brown bases his motion on testimony by K.R. regarding the quality of the testing methods available at the time of trial. He argues that the technology for bullet testing may have improved since that time, apparently in reference to Minn. Stat. § 590.01, subd. 1a. That subdivision, however, only authorizes postconviction testing for fingerprints and forensic DNA. *Id.* Even assuming that this subdivision included testing of bullets and bullet fragments, Brown's claim fails because he has not alleged the actual development of new technology that "was not available at the time of the trial" and that "has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence." Minn. Stat. § 590.01, subd. 1a(a)(2), (c)(2). Brown merely speculates that the technology must have im-

proved with the passage of time. The statute requires more.

## IV.

■ Brown next argues that he is entitled to postconviction relief because another State witness, A.A., testified falsely to seeing a person matching Brown's description shoot Miller. Brown also claims that the postconviction court abused its discretion in denying his motion for discovery of surveillance-video evidence that would allegedly show that A.A. was not present at the time of the shooting.

To support his claim, Brown submitted affidavits from D.S. and L.J. as addenda to his second petition for postconviction relief. Those affidavits stated that A.A. was not present at the time of the shooting. The State responds that Brown's claim was untimely filed, procedurally barred, and fails on the merits.

Brown's claim regarding A.A. was not filed within the 2-year postconviction statute of limitations. Brown made the discovery request on April 10, 2015, as an addendum to his second petition, and on October 23, 2015, in his third petition. He filed the affidavits from D.S. and L.J. on April 15 and June 5, 2015, also as addenda to his second petition. But the second petition focused on the entirely unrelated issue of D.M.'s alleged recantation. Because the discovery request and affidavits address an unrelated issue, they were not timely filed.[1] Thus, they must meet the newly-discovered-evidence or interests-of-justice exception. They meet neither.

The information in the affidavits is not newly discovered evidence; it could have been ascertained with due diligence before the 2-year postconviction statute of limitations expired. Brown knew at the time of

---

1. We do not consider whether the discovery request or affidavit would have been timely filed had they been related to the underlying claims in the petition.

trial whether he was at the scene of the crime, and thus whether A.A. could have seen him there. Further, Brown was with D.S. on the night of the shooting, and thus knew that D.S. could say whether he saw A.A. Similarly, A.A. testified at trial to being with L.J. on the night of the shooting, so Brown knew that L.J. could say whether A.A. was present.

Moreover, the affidavits do not establish Brown's innocence. D.S.'s affidavit says only that he does not recall seeing A.A. that night; whether one witness saw another witness under the circumstances of this case does not establish Brown's innocence. L.J.'s affidavit is more strongly worded, saying that A.A. left "before everything had happened," but that still does not prove innocence. Neither of these affidavits establishes Brown's innocence under a clear-and-convincing-evidence standard. *See* Minn. Stat. § 590.01, subd. 4(b)(2). Accordingly, Brown's claim does not meet the newly-discovered-evidence exception.

Brown's claim also fails under the interests-of-justice exception. There was no interference or dilatory conduct by a third party that prevented Brown from raising this claim within the statute-of-limitations period. We conclude that, because Brown failed to allege facts which, even if proven by a preponderance of the evidence would establish an exception to the postconviction statute of limitations, the postconviction court did not err when it summarily denied this claim.

## V.

▮ Finally, Brown asserts that he received ineffective assistance of trial and appellate counsel. As to trial counsel, Brown argues that counsel failed to: investigate whether A.A. was present at the crime scene; learn of the State's allegedly false evidence regarding the shell casings when cross-examining K.R.; and hire a firearm examiner to analyze the bullets that were fired at the crime scene. The State responds that Brown's claims were untimely filed, procedurally barred, and fail on the merits.

Each of Brown's claims was filed outside the 2-year postconviction statute of limitations. As already discussed, Brown knew at the time of trial whether or not he was at the scene of the crime, and thus whether or not A.A. could have seen him there. Similarly, Brown's claim regarding the shell casings and the bullets was known to him at the time of trial. Accordingly, Brown could have raised a claim for ineffective assistance of trial counsel on these issues on direct appeal and in his first petition. However, Brown did not raise these claims until after the statute of limitations had expired.

Further, no exception is available. For the reasons already discussed, Brown has not presented any newly discovered evidence that could not have been ascertained with due diligence before the statute of limitations expired. Nor has he established that his claims are not frivolous and in the interests of justice. Because the facts alleged in the petition conclusively establish that the petition is untimely filed under the postconviction statute of limitations, the postconviction court did not abuse its discretion when it denied Brown's request for postconviction relief without holding an evidentiary hearing.

As to appellate counsel, Brown argues that counsel failed to: challenge the sufficiency of evidence for accomplice liability; challenge the verdict form reading guilty or not guilty "of murder" rather than of "aiding and abetting"; file a discovery request for color pictures of the bullet casings; raise a claim for ineffective assistance of trial counsel regarding the cross-examination of A.A.; and challenge self-incriminating statements from the pre-sentence

investigation report prepared for sentencing on Brown's 2008 conviction for reckless discharge of a firearm. The State responds that Brown's claims were untimely filed, procedurally barred, and fail on the merits.

 We have already rejected Brown's arguments regarding accomplice liability and the reckless-discharge conviction in his direct appeal. *Brown*, 815 N.W.2d at 618-21. We will not consider arguments that simply rehash claims already raised and decided. *Buckingham v. State*, 799 N.W.2d 229, 232 (Minn. 2011).

Brown's remaining claims regarding appellate counsel were untimely filed. The claim regarding discovery of color pictures was raised in Brown's third petition. The claim regarding appellate counsel's failure to challenge trial counsel's alleged ineffectiveness was raised in his April 10, 2015, addendum to his second petition. Both of these claims could have been raised during the two years after the Supreme Court denied Brown's petition for a writ of certiorari, but Brown failed to do so. Accordingly, these claims are time-barred.

Here, too, no exception is available. Brown does not allege any newly discovered evidence that could not have been ascertained with due diligence. Similarly, responsibility for the untimeliness of the claims rests solely with Brown. Because the facts alleged in the petition conclusively establish that the petition is untimely filed under the postconviction statute of limitations, the postconviction court did not abuse its discretion when it denied Brown's request for postconviction relief without holding an evidentiary hearing.

In sum, each of the claims Brown raised in his second and third petitions for postconviction relief, as well as the claims raised in the addenda to the second petition, fail. Accordingly, the postconviction court did not abuse its discretion in denying these claims without an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the postconviction court.

Affirmed.