*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1228**

Ashaunti Quantay Prowell, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 12, 2026**
**Affirmed**
**Larkin, Judge**

Hennepin County District Court
File No. 27-CR-19-1303

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, N. Nate Summers, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Wheelock, Presiding Judge; Larkin, Judge; and Reyes, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his conviction for driving while impaired, arguing that the evidence was insufficient to sustain the jury's guilty verdict and that the district court

plainly erred by accepting his proposed stipulation regarding his prior conviction for driving while impaired. We affirm.

## FACTS

This is the second appeal in this case. As to the relevant procedural history, a jury found appellant Ashaunti Quantay Prowell guilty of driving while impaired (DWI) in August 2023.[1] Prowell petitioned for postconviction relief in February 2025. He argued that respondent State of Minnesota failed to prove the DWI charge beyond a reasonable doubt and that he was prejudiced by the district court's adoption of a stipulation that he proposed. The postconviction court summarily denied Prowell's petition. It concluded that the evidence was sufficient to support the DWI conviction, that the district court did not plainly err by accepting Prowell's stipulation, and that even if the district court had erred, the alleged error was not prejudicial.

Prowell appeals.

## DECISION

We review a denial of a postconviction petition for an abuse of discretion. *Brown v. State*, 895 N.W.2d 612, 617 (Minn. 2017). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted). "We review a postconviction court's legal determinations de novo, and its factual findings for clear error." *Id.* (quotation omitted).

---

[1] The state charged and tried additional offenses. Because the outcome of those offenses does not impact our decision, we do not discuss them.

**I.**

Prowell contends that the evidence was insufficient to support the jury's finding that he was guilty of DWI. Specifically, he argues that the state failed to prove that he was impaired by alcohol as opposed to some other intoxicating substance. Prowell relies on evidence that the responding officers found a prescription bottle for Oxycodone bearing his name in his vehicle, the pills in that bottle field-tested positive for amphetamine, and a witness who observed Prowell crash his vehicle reported that he thought Prowell had been smoking a "blunt."[2]

Prowell was convicted under Minn. Stat. § 169A.20, subd. 1(1) (2018), which provides that it is a crime for a person to operate a motor vehicle when "the person is under the influence of alcohol." A person is under the influence of alcohol if he does not possess "that clearness of intellect and control of himself that he otherwise would have" or if he drank enough alcohol that his "ability or capacity to drive was impaired in some way or to some degree." *State v. Ards*, 816 N.W.2d 679, 686 (Minn. App. 2012) (quotations omitted).

When a defendant challenges the sufficiency of the evidence supporting a guilty verdict, our standard of review depends on whether the verdict was based on direct or circumstantial evidence. *State v. Petersen*, 910 N.W.2d 1, 6 (Minn. 2018). Direct evidence is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn.

---

[2] Based on Prowell's arguments at trial, we understand this to be a reference to a marijuana cigarette.

2017) (quotation omitted). In contrast, circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Id.* (quotation omitted). "[C]ircumstantial evidence always requires an inferential step to prove a fact that is not required with direct evidence." *State v. Jones*, 4 N.W.3d 495, 501 (Minn. 2024) (quotation omitted).

The postconviction court determined that there was sufficient direct evidence to support the jury's finding of guilt. Prowell asserts that we should apply the circumstantial-evidence standard of review. He cites three cases in support of that assertion. The first case is *State v. Stokes*, in which we stated:

> Stokes' assertion that his conviction was based solely on circumstantial evidence characterizes all of the testimony of both police officers and of [a witness] as circumstantial evidence. This characterization is in error. The observations of [those witnesses] that Stokes was "unsteady," smelled of alcohol, etc., are direct evidence of the conditions they observed. Stokes also overlooks his own admission that he was driving and had consumed alcohol. These admissions are direct, not circumstantial, evidence.

354 N.W.2d 53, 56 (Minn. App. 1984).

The second case is *State v. Holmes*, in which we rejected Holmes's argument that because no witness observed him consume alcohol and he refused blood-alcohol testing, the eyewitness accounts of his condition and behavior was "circumstantial and . . . . insufficient to prove that he was under the influence of alcohol when he drove his pickup truck into the back of a van at an intersection in front of a police officer." 701 N.W.2d 267, 271 (Minn. App. 2005), *aff'd in part*, *rev'd in part on other grounds*, 719 N.W.2d 904 (Minn. 2006). We noted that four eyewitnesses opined that Holmes was intoxicated based

on their direct observations of him. *Id.* We also noted that the officer who testified about Holmes's intoxication had training and experience in detecting intoxication. *Id.*

We also stated that the evidence of Holmes's intoxication was "more than sufficient to support the verdict even if the evidence is characterized as only circumstantial." *Id.* We reasoned that no evidence supported Holmes's assertion of a rational alternative hypothesis of innocence, which was that "the odor of an alcoholic beverage was coming from someone other than [Holmes], or that his behavior was due to a head injury or due to his being a 'terrible driver and belligerent scofflaw with a major attitude problem.'" *Id.*

The third case is *State v. Olson*, in which we concluded that the direct-evidence standard of review applied "because the state presented direct evidence of Olson's alcohol consumption and impaired driving through eyewitness testimony." 887 N.W.2d 692, 700 (Minn. App. 2016). We reasoned as follows:

> Here the record shows Olson consumed multiple alcoholic beverages over the course of the day—from 10:00 a.m. to around 6:00 p.m. Both [Olson's friend] and the trooper testified that, based on their observations, they believed Olson was too drunk to drive. [Olson's friend] took over driving and described Olson's unusual behavior at the restaurant just before he fell and hit his head. The trooper detected an odor of alcohol coming from Olson, and observed that Olson was staggering and had an unsteady gait. Olson admitted he had been drinking, and Olson refused to perform field sobriety tests or a preliminary breath test. Based on this record, a jury could reasonably conclude that Olson was driving while impaired by alcohol. The evidence is sufficient to support his conviction for this offense.

*Id.*

5

In this case, the state presented evidence—described below—similar to the evidence deemed to be direct in *Stokes*, *Holmes*, and *Olson*. We therefore apply the standard of review applicable to a guilty verdict based on direct evidence. Under that standard, we carefully analyze the record to determine whether the evidence, viewed in the light most favorable to the conviction, was sufficient to permit the jury to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989); *State v. Olson*, 982 N.W.2d 491, 495 (Minn. App. 2022). We assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Brocks*, 587 N.W.2d 37, 42 (Minn. 1998). We defer to the jury's credibility determinations and will not reweigh the evidence on appeal. *State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009); *State v. Watkins*, 650 N.W.2d 738, 741 (Minn. App. 2002). We will not disturb a guilty verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could have reasonably concluded that the state proved the defendant's guilt. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

At trial, the jury in this case heard testimony from several officers. Officer MB testified that she was dispatched to "a vehicle that had struck the median" near Interstate 394 and Highway 169 in Golden Valley. Upon arrival, she observed a vehicle with significant damage. It is undisputed that Prowell was the driver of that vehicle. Officer MB testified, "As I was speaking with [Prowell] and getting him in the handcuffs, I did smell the odor of a consumed alcoholic beverage emanating from his person." She further testified that Prowell had "slurred speech" and that his responses were "somewhat delayed," which—based on her training and experience—led her to believe that he was

6

intoxicated and laboring under the influence of alcohol.  Officer MB testified that Prowell was transported to the police station and given a breath-alcohol test, however the state did not offer the test results as evidence at trial.

Video from Officer MB's body-worn camera was admitted as evidence.  The video shows Prowell admit, at the scene, that he was driving the vehicle before it crashed.  Later in the video, Prowell is shown performing field sobriety tests at a police station.  During the heel-to-toe steps, Prowell was wobbly and had trouble keeping his balance.  Prowell admitted that he had consumed "a couple beers."  The officer conducting the tests remarked that Prowell appeared to have consumed more alcohol than that.  Prowell later admitted that he had also consumed "one shot."  The postconviction court noted that, in the video, Prowell's "speech is noticeably slurred and delayed" and that the video shows him "stumbling while attempting to walk in a straight line."

Officer LS testified that, when he arrived at the accident scene, he observed a heavily damaged vehicle.  He testified that after briefly interacting with Prowell, he "detected an odor . . . consistent with that of a consumed alcoholic beverage emitting from him."  Officer LS also testified that he recovered an Oxycodone prescription bottle with Prowell's name on it from the center console of the vehicle.  The pills were field tested and were presumptively positive for amphetamine.

Video from Officer LS's body camera was also admitted as evidence.  At the beginning of the video, the officer is shown interacting with a bystander, who confirmed that he reported the crash. Their conversation was captured on the video. The officer asked the bystander if Prowell was "drunk or something" and the bystander replied:  "Oh man

7

he's got to be yeah, I think he's smoking a blunt. We were on 394 and he lost his sh-t. He was going about 100 miles an hour, blew past us, [and] smacked into the median." The video also showed Officer MB ask Officer LS, "Did you smell the booze?" Officer LS replied, "Yeah, he reeks like it." Officer LS later stated, "[h]e reeks like booze," and "I don't know how drunk, but you can smell it."

In sum, the jury heard direct evidence that Prowell admitted that he had consumed alcohol, a bystander observed Prowell drive approximately 100 miles per hour and crash into the median, the bystander told a responding officer that he believed Prowell was intoxicated, two responding officers detected an odor of consumed alcohol emanating from Prowell, Officer MB testified that Prowell slurred his words and was slow to respond, Officer MB testified that she believed Prowell was impaired by alcohol, and video evidence corroborated that testimony and showed that Prowell had a difficult time maintaining his balance. Under the caselaw described above, this is direct evidence. And based on this evidence, a jury could reasonably conclude, beyond a reasonable doubt, that Prowell was driving while impaired by alcohol, as the postconviction court concluded.

Application of the circumstantial-evidence standard of review would not change our determination that the evidence was sufficient to sustain the guilty verdict. Under that standard we first determine the circumstances proved, disregarding evidence inconsistent with the verdict. *Harris*, 895 N.W.2d at 600-01. Next, we determine "whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt." *Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017) (quotation omitted). In doing so, we do not defer to the fact-finder's choice between

reasonable inferences. *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013). But we will not reverse a conviction based on circumstantial evidence unless there is a reasonable inference other than guilt. *Loving*, 891 N.W.2d at 643.

Prowell argues that "[w]hen viewed as a whole, the circumstances proved do not preclude a reasonable inference that [he] was not impaired by alcohol but instead some other substance" such as Oxycodone, ecstasy, or marijuana. The postconviction court noted that even if the circumstantial-evidence standard applied and it were to accept Prowell's hypothesis of innocence as reasonable, "that does not prohibit him from also being impaired by alcohol." We agree.

We also reason that, despite the evidence of the Oxycodone bottle containing a substance that field-tested positive for amphetamine, there was no evidence that Prowell had consumed or was under the influence of either substance. And despite the bystander's report that he thought Prowell had been smoking a "blunt," there is no evidence showing that the "blunt" contained marijuana, and there was no evidence that the police found or smelled marijuana on Prowell or in his car. Under the circumstantial-evidence standard of review, we do not reverse a conviction for mere conjecture. *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998). "[P]ossibilities of innocence" do not justify relief. *State v. Ostrem*, 535 N.W.2d 916, 923 (Minn. 1995). Prowell's hypothesis of innocence is based on mere conjecture and is not reasonable.

In sum, the postconviction court did not err in determining that the evidence was sufficient to sustain the jury's guilty verdict.

## II.

Prowell argues that the district court committed reversible error by accepting his signed stipulation regarding his prior DWI conviction as a trial exhibit. The postconviction court rejected this argument.

Prowell concedes that he did not object to the stipulation and that he invited the error. But as he notes, although "[t]he invited error doctrine prevents a party from asserting an error on appeal that he invited or could have prevented in the court below," "[t]he invited error doctrine . . . does not apply to plain errors." *State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007). We therefore review the admission of the challenged stipulation for plain error, as the postconviction court did.

"To establish a plain error a defendant must demonstrate that (1) there was an error, (2) it was plain, and (3) it affected substantial rights." *Id.* If a defendant establishes all three factors, an appellate court then considers "whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Id.* (quotation omitted).

"An error is plain if it is clear and obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). Prowell asserts that admission of his stipulation was error that was plain under Minn. R. Evid. 403, which states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Under the elements of the enhanced DWI offense with which Prowell was charged, the state had to prove that Prowell had a qualifying DWI conviction within the previous ten years. *See* Minn. Stat. §§ 169A.26 (imposing a gross-misdemeanor penalty for DWI if an "aggravating factor" is present), .03, subd. 3(1) (defining the term aggravating factor to include "a qualified prior impaired driving incident within the ten years immediately preceding the current offense"), subd. 20 (defining the term "[p]rior impaired driving conviction" to include a prior conviction for DWI) (2018). When proof of a prior impaired driving incident is required, the district court "must accept an unequivocal judicial admission of a prior DWI and let the defendant remove from the jury the issue of whether he had prior DWI convictions." *State v. Clark*, 375 N.W.2d 59, 61-62 (Minn. App. 1985). "By judicially admitting the existence of the element of the prior conviction, the defendant removes that issue from the case. The effect is that the case will be submitted to the jury as an ordinary DWI case." *State v. Berkelman*, 355 N.W.2d 394, 397 n.2 (Minn. 1984).

Prowell and his counsel submitted a signed stipulation, which was later admitted into evidence, stating that "Prowell has a conviction for driving while impaired from 2014" and that "[t]his conviction enhances this driving under the influence incident to a Gross Misdemeanor." Prowell's counsel discussed the ramifications of the stipulation on the record and asked Prowell, "Okay. You don't dispute that you had a prior conviction for driving while impaired, right?" Prowell responded, "No." Prowell's counsel also asked, "And you understand that by conceding that you have the prior DWI . . . , it reduces what the State has to prove as to your priors? Do you understand that?" Prowell responded in the affirmative. Prowell's counsel stated, "But it also, you get the benefit from them not

11

knowing the details of these prior convictions." Prowell responded, "Yeah." The district

court questioned defense counsel regarding the stipulation stating:

> One last thing, . . . I do want to know is the form of
> that stipulation. We off the record had a conversation in
> which I asked about the form and the stipulation. You told
> me that the form of the stipulation was consistent to a
> strategic decision that you had made, which I don't need to
> know about. It's just that you are specifically approving of
> as a matter of strategy to the form of the stipulation. Is that a
> correct statement?

Defense counsel responded, "Yes, Your Honor."

At the beginning of trial, the district court read the stipulation to the jury. The

district court then asked counsel if this was a correct recitation of the stipulation, and

Prowell's counsel responded, "Yes, Your Honor." The district court then received the

signed stipulation as an exhibit.

When instructing the jury, the district court addressed the stipulation as follows:

"The parties have agreed and you therefore must accept as true that the Defendant has a

prior impaired driving incident within ten years immediately preceding the current

offense." The instructions also contained, at defense counsel's request, a cautionary

instruction regarding Prowell's prior convictions:

> Now, the parties have stipulated, and you've heard it
> twice, to the existence of prior convictions. This evidence is
> not to be used as proof of the character of the Defendant or that
> the Defendant acted in conformity with such character. The
> Defendant is not being tried for and may not be convicted of
> any offenses other than the charged offenses and you're not to
> convict the Defendant on the basis of his prior convictions. To
> do so might result in unjust double punishment.

12

In sum, Prowell expressly stipulated to having "a conviction for driving while impaired from 2014," instead of simply stipulating to the relevant element and removing that issue from the jury's consideration. Prowell complains that "submitting into evidence a form that stated that [he] had a prior DWI" instead of "simply stipulating to his legal status" defeated the purpose of the stipulation because by "admitting in writing to the jury that he had previously been convicted of DWI," the jury could conclude that he had a propensity to drive while intoxicated and was, therefore, "likely guilty here."

Prowell's concern is reasonable. However, when the district court questioned his approach to the stipulation, defense counsel assured the court that the approach was based on trial strategy. Indeed, "[w]hat evidence to present to the jury . . . represents an attorney's decision regarding trial tactics and lies within the proper discretion of trial counsel." *State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999). For that reason, the postconviction court determined that the district court did not err in accepting the stipulation.

Prowell argues that any strategy underlying the stipulation is irrelevant. He notes that the Minnesota Supreme Court has applied the plain-error rule in a variety of situations in which the defendant invited, presumably for strategic reasons, an error by the district court. For example, in *State v. Gisege*, the supreme court addressed a "fundamental error" arising from the district court's provision of a jury instruction regarding a lesser-included offense even though the defendant had requested that instruction. 561 N.W.2d 152, 158-61 (Minn. 1997). The supreme court also applied the plain-error rule in *State v. Carridine* to the district court's provision of a self-defense jury instruction even though the defendant

13

had requested that instruction. 812 N.W.2d 130, 142-44 (Minn. 2012). Prowell asserts that the requests by the defense for jury instructions in *Gisege* and *Carridine* were also strategic.

This case is unique in that the district court apparently recognized that the "form"— which we understand to mean the wording—of the defense's stipulation was unusual. Thus, the district court raised the issue with defense counsel, and counsel assured the district court that his decision to use that particular wording was strategic. As the postconviction court noted, the district court allowed Prowell "to stipulate to his prior conviction in the specific form he approved." The postconviction court concluded that the district court did not err in admitting the stipulation because "rather than denying a request to stipulate, the district court facilitated it, honoring [the defense's] strategic choice."

Prowell does not address whether it is appropriate to apply plain-error review if the district court grants a defendant's request for a specifically worded stipulation after (1) questioning defense counsel to ensure that he wants that wording and (2) being assured by defense counsel that the wording it is consistent with a defense strategy. But we need not resolve that issue because the postconviction court correctly reasoned that alleged error did not affect Prowell's substantial rights. *See State v. Moore*, 863 N.W.2d 111, 119 (Minn. App. 2015) ("If an appellate court concludes that any requirement of the plain-error test is not satisfied, the appellate court need not consider the other requirements"), *rev. denied* (Minn. July 21, 2015).

An error affects an appellant's substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict, that is, if the error changed the

14

outcome of the case. *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). "When considering whether an error affected a defendant's substantial rights, we consider the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Mosley*, 853 N.W.2d 789, 803 (Minn. 2014) (quotations omitted).

As to the pervasiveness of the stipulation, the state did not focus on the stipulation during its case in chief or in its closing argument. As the postconviction court noted, the state did not mention the stipulation during either its closing or rebuttal arguments. And the district court provided a cautionary instruction to dissuade the jury from using Prowell's prior DWI conviction for an improper purpose. "We presume a jury follows a court's cautionary instruction."[3] *State v. Riddley*, 776 N.W.2d 419, 428 (Minn. 2009).

As to the strength of the evidence, Prowell argues that if the jury had not known about his prior DWI, "it is reasonably likely that it would not have found him guilty because the [s]tate's evidence was otherwise weak." Prowell notes that the state did not introduce evidence of chemical testing or a field sobriety test, "which are expected in a DWI case." Prowell relies on *Clark*, but that case is distinguishable procedurally and factually.

---

[3] We acknowledge Prowell's argument that the circumstances warranted a curative instruction striking the stipulation and instructing the jury to disregard it instead of a cautionary instruction regarding proper use of the stipulation. *See State v. Strommen*, 648 N.W.2d 681, 687 (Minn. 2002) ("Because the testimony was inadmissible, the [district] court's instruction should have been curative, rather than cautionary, and the inadmissible testimony should have been stricken."). However, because we assume without deciding that acceptance of the stipulation was a plain error, we consider the mitigating effect of the instruction, which—like the stipulation—was proposed by the defense.

Procedurally, *Clark* is distinguishable because the district court in that case erred by refusing to allow the defendant to stipulate to the existence of his prior DWI conviction. 375 N.W.2d at 62. We therefore applied the harmless-error standard of review, and not the plain-error standard. *Id.* at 62-63. Although the standards are similar, "the state bears the burden of establishing that [an] error was harmless." *State v. Craig*, 807 N.W.2d 453, 468 (Minn. App. 2011), *aff'd*, 826 N.W.2d 789 (Minn. 2013). But under the plain-error standard, the defendant bears the burden of establishing that the error affected his substantial rights, and it is a "heavy burden." *See State v. Sontoya*, 788 N.W.2d 868, 872 (Minn. 2010) (stating that "[p]lain error is prejudicial when there is a reasonable likelihood that the error had a significant effect on the jury's verdict" and that "[t]he defendant bears a heavy burden of persuasion on this prong") (quotations omitted)).

Factually, *Clark* is distinguishable because unlike this case, in which Prowell crashed into a median while driving at a high speed, Clark's observed driving conduct was much less egregious: the police stopped him because he was "traveling very slowly and weaving in and out of [his] proper traffic lane." *Clark*, 375 N.W.2d at 61. In addition, in *Clark*, "[t]he evidence of intoxication was entirely observation testimony by police officers." *Id.* at 63. Unlike the facts here, *Clark* does not indicate that the driver in that case admitted consumption of alcohol, smelled like alcohol, slurred his words, had slow responses, or had trouble maintaining his balance during a sobriety test. *See id.* at 61. As the postconviction court reasoned, unlike *Clark*, evidence in this case corroborated the officer's opinion that Prowell was intoxicated. For example, the body-worn camera video showed Prowell slur his speech, respond slowly, and stumble during a sobriety test.

16

In sum, the evidence of impaired driving in this case was much stronger than the evidence in *Clark*. On this record, Prowell has not met his "heavy burden" to show that the alleged error affected his substantial rights. The postconviction court therefore did not err in determining that he was not entitled to relief under the plain-error standard.

**Affirmed.**