*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0841**

Arthur Rafie Mullins, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed June 17, 2024**
**Affirmed**
**Bratvold, Judge**

Stearns County District Court
File No. 73-CR-14-10924

Cathryn Middlebrook, Chief Appellate Public Defender, Andrew J. Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Chief Deputy County Attorney, St. Cloud, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Connolly, Judge; and Smith, Tracy M., Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

Appellant challenges the district court's denial of his postconviction motion to withdraw his guilty plea. Appellant argues that the district court erred by determining his claims were procedurally barred and failing to grant an evidentiary hearing. We conclude

that the district court abused its discretion by determining that appellant's claims were procedurally barred. But we also conclude that appellant failed to allege facts that, if true, would entitle him to withdraw his guilty plea. Thus, the district court did not abuse its discretion by denying appellant's postconviction motion to withdraw his guilty plea without an evidentiary hearing. We affirm.

**FACTS**

Appellant Arthur Rafie Mullins appeals for the third time from his conviction for first-degree criminal sexual conduct. These facts are based on the record and this court's two opinions in Mullins's prior appeals.

In December 2014, respondent State of Minnesota charged Mullins with one count of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct based on allegations that he sexually abused his stepdaughter between January 1, 2009, and March 1, 2013. *State v. Mullins*, No. A19-1620, 2020 WL 5107289, at *1 (Minn. App. Aug. 31, 2020) (*Mullins I*), *rev. denied* (Minn. Nov. 25, 2020). Mullins retained attorney T.E.-H. In July 2017, Mullins pleaded guilty to first-degree criminal sexual conduct and the state agreed to dismiss the remaining charges. *Id.* The state also agreed to a stayed 360-month sentence on the conditions that Mullins cooperate with the presentence investigation, comply with the conditions of release, and appear for sentencing. *Id.*

Mullins failed to appear at the sentencing hearing in December 2017, and the district court issued a warrant for his arrest. *Id.* In August 2018, attorney T.E.-H. wrote a letter to the district court saying that his law license had been suspended. Mullins was taken into custody in April 2019 and the district court appointed a public defender.

2

In July 2019, Mullins moved to withdraw his guilty plea under Minn. R. Crim. P. 15.05, subd. 2, arguing that it was "fair and just" to allow him to do so because he "pled guilty to get out of jail and on a promise of probation" and attorney T.E.-H. "failed to communicate with him at various times." The state opposed the motion. At a hearing, the district court denied Mullins's motion to withdraw his plea, finding that the plea was "accurate, voluntary, and intelligent" and that "any allegations about ineffective assistance of counsel really had to do with conduct that occurred after his plea."

The district court proceeded with sentencing. "Because Mullins failed to appear at the first sentencing hearing, the state concluded that he violated the plea agreement" and "requested an executed sentence of 360 months." *Id.* Mullins argued for the district court to stay the sentence as contemplated in the plea agreement. The district court adjudicated Mullins guilty of first-degree criminal sexual conduct and sentenced him to 360 months in prison.

*First Appeal and Remand*

Mullins appealed and argued that his plea was inaccurate because the factual basis did not establish the intent and venue elements and the state used leading questions. *Id.* at *2-3. This court noted that Mullins did "not appeal the denial of his presentence request to withdraw from the plea" but argued instead that "the facts admitted did not sufficiently establish the elements of first-degree criminal sexual conduct." *Id.* at *2 n.2. Mullins also challenged his sentence and contended that the district court erred in calculating his criminal-history score. *Id.* at *4. This court affirmed Mullins's conviction, concluding that

his "plea was accurate and valid." *Id.* at *3. But we remanded to develop the record on Mullins's criminal-history score. *Id.* at *3-4.

On remand, the parties agreed that Mullins's criminal-history score "should have been 5.5," which rounds down to 5, "and, therefore, the original criminal history score" of 8 "was erroneous." The parties disagreed, however, about whether to assign a custody-status point. The district court agreed with the state that one custody-status point applied and resentenced Mullins to 360 months in prison.

*Second Appeal and Remand*

Mullins appealed to this court for a second time. *State v. Mullins*, No. A21-1024, 2022 WL 1210183, at *2 (Minn. App. Apr. 25, 2022) (*Mullins II*). Before submitting a brief, Mullins moved to stay the appeal and remand for postconviction proceedings "related to whether Mullins's plea was intelligently entered." We denied Mullins's motion, reasoning that this court has interpreted Minn. R. Crim. P. 28.02—which allows a defendant to move to stay an appeal for postconviction proceedings—as "only applying to direct appeals" and that Mullins's appeal was "a sentencing appeal."

In their briefs to this court on the merits, "the parties agree[d] that the district court erred by including one custody-status point in [Mullins's] criminal-history score." *Id.* We "independently review[ed] the legal issue" and determined that the district court "abused its discretion by assigning one custody-status point to Mullins." *Id.* at *2-3. We therefore remanded for resentencing: "The district court may exercise its discretion to impose a sentence within the range for 5 criminal-history points." *Id.* at *3. Mullins requested that we "instruct the district court to consider whether [his] new criminal history score" means

4

that his guilty plea was not intelligent. *Id.* at *3 n.2. But we declined to consider the issue "because Mullins did not properly raise the argument on appeal, nor did he properly brief the issue." *Id.*

On remand in January 2023, Mullins moved to withdraw his guilty plea under Minn. R. Crim. P. 15.05, subd. 1, based on ineffective assistance of counsel and the inaccurate criminal-history score at the time of Mullins's plea. Mullins argued that "being placed on warrant status and later being found unamenable to probation is at least partly because of . . . the ineffective assistance of counsel Mullins received." Mullins also argued that his plea was unintelligent because, at the time of the plea, "[t]here was a mutual mistake . . . regarding Mullins's criminal history score." The state did not respond.

At a January 2023 hearing, the district court asked the parties to brief the issue of "whether or not the motion for a plea withdrawal is timely" and "whether or not an evidentiary hearing is needed." Mullins's supplemental memorandum argued that the motion to withdraw his guilty plea was not procedurally barred because it "addresse[d] new developments since the [presentence withdrawal] motion was first heard" and that an evidentiary hearing was required for Mullins to testify about "the circumstances of his guilty plea and his actions leading up to his guilty plea and before he failed to appear for sentencing." The state's memorandum argued that Mullins's motion was "procedurally barred."

In an April 6, 2023 order, the district court denied Mullins's postconviction motion to withdraw his guilty plea. The district court first cited *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976), stating that all claims known but not raised on direct appeal are barred in a

5

subsequent petition for postconviction relief. The district court then noted that Mullins "did not allege ineffective assistance of counsel in his first appeal" despite knowing that attorney T.E.-H.'s "law license had been suspended" and that Mullins previously "litigated a [presentence] motion to withdraw a guilty plea and did not appeal the court's decision." The district court concluded that Mullins was "procedurally barred" from moving to withdraw his guilty plea in a postconviction proceeding "unless he presents new information to support his present motion." The district court concluded that Mullins did not offer "new information to justify an evidentiary hearing in this case" and denied Mullins's motion.

The district court resentenced Mullins to 306 months in prison. Mullins appeals.

**DECISION**

Mullins argues that his motion to withdraw his guilty plea under Minn. R. Crim. P. 15.05, subd. 1, is not procedurally barred and that he is entitled to an evidentiary hearing. "[A] motion to withdraw a guilty plea made after sentencing must be raised in a petition for postconviction relief." *Lussier v. State*, 821 N.W.2d 581, 586 n.2 (Minn. 2012). Appellate courts "review a postconviction court's summary denial of a petition for postconviction relief for an abuse of discretion." *Andersen v. State*, 913 N.W.2d 417, 422 (Minn. 2018). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.*

**I.      The district court abused its discretion by determining that Mullins's motion to withdraw his guilty plea was procedurally barred.**

Mullins's brief to this court argues that his motion to withdraw his guilty plea is not procedurally barred. The state's brief does not address the *Knaffla*-bar issue.[1]

"[O]nce a direct appeal has been taken, all claims raised in the direct appeal and all claims that were known or should have been known but were not raised in the direct appeal are procedurally barred" under *Knaffla*. *Colbert v. State*, 870 N.W.2d 616, 626 (Minn. 2015) (emphasis omitted) (describing the "reformulated . . . *Knaffla* rule"); *see also* Minn. Stat. § 590.01, subd. 1 (2022) ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."). "[A] postconviction court may summarily deny a claim that is procedurally barred by the *Knaffla* rule." *Pearson v. State*, 891 N.W.2d 590, 597 (Minn. 2017).

In a postconviction proceeding, Mullins moved to withdraw his guilty plea under Minn. R. Crim. P. 15.05, subd. 1, arguing that ineffective assistance of trial counsel and the inaccuracy of Mullins's criminal-history score at the time of the plea and first sentencing hearing established a manifest injustice requiring withdrawal of the plea. Mullins argues that his motion to withdraw his guilty plea was not procedurally barred because his claims were "not ripe for review during either of his [previous] appeals."

_____

[1] Mullins argues in his reply brief that the state "waived consideration" of the *Knaffla*-bar issue and "seemingly concedes that Mullins' claims are not *Knaffla*-barred." This does not end our analysis because we will address an issue on the merits whether or not a respondent filed a brief or briefed the issue raised by an appellant. *See* Minn. R. Civ. App. P. 142.03 (stating that, if a respondent fails to file a brief, the case will be determined on the merits).

7

Mullins points out that his criminal-history score "was still being litigated and his ineffective-assistance-of-counsel claim required an evidentiary hearing and could not have been raised on direct appeal." We address Mullins's arguments in turn.

### A. Criminal-History Score

Mullins argues that "[i]t wasn't until after" his second appeal "that Mullins was able to challenge whether the drastic reduction in his criminal-history score rendered his plea unintelligent" and that he "raised this claim immediately once it was available to him." The district court's order denying Mullins's motion to withdraw his plea did not explicitly state that Mullins's criminal-history-score claim was procedurally barred, but it stated that Mullins failed to present "information not already litigated or known to him at the time of his appeal[s]."

We conclude that Mullins could not have raised his inaccurate criminal-history score as a basis to withdraw his guilty plea in either of his prior appeals. Mullins's first appeal, in part, challenged his sentence, "arguing that the district court erred in calculating his criminal-history score." *Mullins I*, 2020 WL 5107289, at *1. This court determined that "the record [was] insufficient to permit review" of his criminal-history score and remanded "to further develop the sentencing record." *Id.* at *4. Accordingly, the record at the time of Mullins's first appeal did not allow him to raise a claim that his inaccurate criminal-history score required plea withdrawal.

Before Mullins's brief to this court was due in his second appeal, he moved for an order staying the appeal and remanding the matter "to allow post-conviction proceedings related to whether Mullins's plea was intelligently entered" because, at the time of the plea

8

hearing, he believed that he had a higher criminal-history score. We denied Mullins's motion, noting that it was "a sentencing appeal" and that Minn. R. Crim. P. 28.05 did not permit a stay and remand. In considering the merits of Mullins's second appeal, we declined to address Mullins's argument that we "should instruct the district court to consider whether [his] new criminal history score . . . renders his guilty plea unintelligent" because Mullins did not properly raise or brief the argument on appeal. *Mullins II*, 2022 WL 1210183, at *3 n.2. Thus, Mullins could not have raised his claim for a plea withdrawal based on his inaccurate criminal-history score before or during his second appeal.

The district court therefore erred by determining that Mullins was procedurally barred from moving to withdraw his plea based on his inaccurate criminal-history score.

## B.    Ineffective Assistance of Counsel

Mullins argues that he "could not have raised an ineffective-assistance-of-counsel claim on direct appeal because such a claim necessarily requires additional fact finding" regarding conversations with attorney T.E.-H. "that took place between the plea and sentencing hearing." A claim for ineffective assistance of trial counsel is not procedurally barred "when the claim requires examination of evidence outside the trial record or additional fact-finding by the postconviction court, because the claim is not based solely on the briefs and trial court transcript." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013); *see, e.g.*, *Robinson v. State*, 567 N.W.2d 491, 495 (Minn. 1997) (stating that defendant's claim that "his trial counsel failed to communicate two plea offers requires additional factfinding, so it is not barred by his having known of the claim at the time of his direct

9

appeal" because "[i]n order to evaluate such a claim, a court needs to hear testimony from the defendant, his or her trial attorney, and any other witnesses who have knowledge of conversations between the client and the attorney").

Mullins's presentence motion to withdraw his guilty plea asserted that attorney T.E.-H. "failed to communicate with [Mullins] at various times due to . . . illness." In the postconviction proceeding, the district court determined that Mullins was "procedurally barred" from raising a claim of ineffective assistance of counsel as a basis to withdraw his plea because he knew of attorney T.E.-H.'s misconduct at the time of his presentence plea-withdrawal motion and "did not allege ineffective assistance of counsel in his first appeal."

We conclude that Mullins's ineffective-assistance-of-counsel claim was not procedurally barred. First, Mullins's presentence plea-withdrawal motion relied on separate legal authority for relief different from that in his postconviction motion. His presentence motion described circumstances making it "fair and just" to withdraw his plea under Minn. R. Crim. P. 15.05, *subd. 2*, which included issues with attorney T.E.-H. In contrast, Mullins's postconviction motion argued that attorney T.E.-H. provided "ineffective assistance . . . creat[ing] a manifest injustice in the guilty plea" under Minn. R. Crim. P. 15.05, *subd. 1*.

Second, Mullins's claim for ineffective assistance of counsel could not have been raised in his first appeal because it was related to out-of-court conversations between Mullins and attorney T.E.-H. *See Dukes v. State*, 621 N.W.2d 246, 255 (Minn. 2001) (explaining that the supreme court has "recognized that claims that require a court to

10

explore conversations between attorney and client are best handled on a petition for postconviction relief"). For example, Mullins's postconviction motion to withdraw his guilty plea asserted that attorney T.E.-H. advised Mullins "to let [him] handle the warrant and rescheduling" of the sentencing hearing for which Mullins failed to appear. Thus, the district court erred by determining that Mullins's ineffective-assistance-of-counsel claim was procedurally barred.

Because we conclude that the Mullins's postconviction motion to withdraw his guilty plea was not procedurally barred, we next consider whether Mullins was entitled to an evidentiary hearing.

## II. The district court did not abuse its discretion by denying Mullins's motion to withdraw his plea without an evidentiary hearing.

Mullins's brief to this court argues that his postconviction motion to withdraw his guilty plea "alleged facts that, if proven, would entitle him to relief" and therefore he was entitled to an evidentiary hearing. Under Minn. R. Crim. P. 15.05, subd. 1, "[a]t any time the court must allow a defendant to withdraw a guilty plea upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice."

A district court must hold an evidentiary hearing on a petition for postconviction relief "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2022). "In determining whether an evidentiary hearing is required, a postconviction court considers the facts alleged in the petition as true and construes them in the light most favorable to the petitioner." *Brown v. State*, 895 N.W.2d 612, 618 (Minn. 2017). "A postconviction court,

11

however, need not hold an evidentiary hearing when the petitioner alleges facts that, if true, are legally insufficient to entitle him to the requested relief." *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012); *see also State v. Nicks*, 831 N.W.2d 493, 506 (Minn. 2013) ("If the postconviction court concludes there are no material facts in dispute that preclude dismissal, and the State is entitled to dismissal of the petition as a matter of law, the court is not required to hold an evidentiary hearing." (quotation omitted)).

Mullins urges this court "to remand and direct the [district] court to hold an evidentiary hearing" on his motion to withdraw his guilty plea based on his inaccurate criminal-history score and ineffective assistance of counsel. We consider his arguments in turn.

### A.      Criminal-History Score

Mullins contends that his guilty plea was unintelligent "because during his plea and sentencing hearings the parties mistakenly believed" that he had a criminal-history score of 8 when it was "actually" 5. Mullins argues that he is entitled to an evidentiary hearing to demonstrate that, had he "known at the time of his plea that he had a criminal-history score of 5, he may have negotiated a lower sentence, or chosen to take his case to trial since he faced a lower presumptive sentence if he were convicted."

The state argues that "Mullins failed to make the showing necessary to justify an evidentiary hearing" because he "failed to offer any relevant factual support for his claim that the mistake [in his criminal-history score] induced his plea of guilty." The state also argues that, regardless, Mullins is not entitled to relief because an error in a defendant's criminal-history score "does not render a plea invalid when [the criminal-history score] is

not part of the plea agreement, the sentences are permissible under the guidelines for the corrected score, and the sentence does not exceed that contemplated by the plea agreement."

For two reasons, the record "conclusively show[s]" that Mullins "is entitled to no relief" regarding his criminal-history-score claim for two reasons. Minn. Stat. § 590.04, subd. 1. First, Mullins's memorandum in support of his plea-withdrawal motion failed to argue that he would not have accepted the plea had he known that his criminal-history score was 5 instead of 8. Mullins argued only that, because "[t]here was a mutual mistake in this case regarding Mullins's criminal history score[,] . . . it cannot be said that, at the time of the plea, Mullins's guilty plea was . . . intelligent." For the first time on appeal, Mullins argues that "he may have negotiated a lower sentence or chosen to take his case to trial" had he known his correct criminal-history score. But because Mullins did not make these arguments below, his motion to withdraw his guilty plea failed to allege facts sufficient to show that "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1.

Second, caselaw supports the legal conclusion that Mullins's plea was intelligent. "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Nelson v. State*, 880 N.W.2d 852, 858 (Minn. 2016) (quotation omitted). In determining whether a plea was intelligently entered, appellate courts consider whether, when the defendant pleaded guilty, he "understood the charges against him, the rights he waived, and the consequences of the plea." *Id.*

Mullins argues that a "plea agreement based on a mutual mistake regarding the presumptive sentence generally renders a guilty plea unintelligent," citing *State v. DeZeler*, 427 N.W.2d 231 (Minn. 1988), and *State v. Benson*, 330 N.W.2d 879 (Minn. 1983). In *DeZeler*, the parties agreed that, in exchange for the defendant's guilty plea to receiving stolen property, the state would "recommend that the trial court 'cap' the probationary jail term at 4 months or 6 months, depending on whether or not [the] defendant cooperated by naming" the person who sold him the stolen property. 427 N.W.2d at 232-33. The defendant's guilty plea was "based entirely on the assumption that the presumptive sentence was a stayed sentence," and "the parties mistakenly believed that the only real issue left for the trial court was the length of probationary jail time that defendant had to serve." *Id.* at 235. At sentencing, the parties "learned that the defendant's criminal history score was three, not two," and thus the presumptive sentence was 34 months in prison, which the district court imposed. *Id.* at 233. The supreme court affirmed this court's decision to reverse and remand, reasoning that the defendant was entitled to withdraw his plea based on the mistake related to his criminal-history score. *Id.* at 235.

In *Benson*, the defendant pleaded guilty based on a plea agreement that the "court would not depart upward from the presumptive sentence," which the defendant's counsel told the district court was 32 months in prison based on a criminal-history score of 5. 330 N.W.2d at 880. The subsequently prepared sentencing worksheet showed that the defendant's criminal-history score was 6 and that the presumptive sentence was 41 months in prison. *Id.* At the urging of the defendant's counsel, the district court imposed a 32-month sentence—a downward durational departure. *Id.* The supreme court remanded,

determining that "the fact that defendant mistakenly understood that the presumptive sentence was 32 months is not a ground for the departure but would be a ground for letting him withdraw the guilty plea and stand trial on the original charges." *Id.*

We conclude that *DeZeler* and *Benson* are not helpful because they are factually distinct from Mullins's case. Mullins's criminal-history score was not part of the plea agreement. Mullins pleaded guilty to first-degree criminal sexual conduct, and in exchange, the state agreed to dismiss the remaining charges and to the imposition of a stayed 360-month sentence on the condition that Mullins cooperate with the presentence investigation, comply with the conditions of presentence release, and appear for sentencing. It is true that the presentence-investigation report, which was completed after the plea, erroneously stated that Mullins had a criminal-history score of 8 instead of 5. *See Mullins II*, 2022 WL 1210183, at *3 (determining that Mullins had a criminal-history score of 5). Thus, Mullins mistakenly believed his criminal-history score was *higher* at the time of the plea agreement, not *lower* as the defendants in *DeZeler* and *Benson* believed. Still, as the state points out, the 360-month sentence Mullins received at sentencing was within the presumptive range for his offense of conviction and a criminal-history score of 5, though at the high end of that range.

Mullins also demonstrated at the plea hearing that he understood the charges against him, the rights he waived, and the consequences of the plea. *See Nelson*, 880 N.W.2d at 858. At the time of his plea, Mullins stated that he understood the conditions of his plea agreement and that if he violated the conditions, "the State would not be bound by the plea agreement and could ask that [his] sentence be executed." Accordingly, the record shows

15

that Mullins understood that failure to comply with the conditions of the plea agreement could result in an executed sentence, which, based on his criminal-history score in the presentence-investigation report, was presumptively 360 months in prison. When Mullins violated the plea agreement, the district court's imposition of an executed sentence was not based on the inaccurate criminal-history score. On resentencing, Mullins received a presumptive 306-month prison sentence based on his reduced criminal-history score. Thus, the reduced criminal-history score did not render his plea unintelligent because he ultimately received a shorter sentence than he bargained for.

In sum, the record conclusively shows that Mullins is not entitled to relief on his criminal-history-score claim, and thus the district court did not abuse its discretion by denying an evidentiary hearing on this claim.

### B.      Ineffective Assistance of Counsel

Mullins argues that he "satisfied the low showing necessary to obtain an evidentiary hearing on his ineffective-assistance-of-counsel claim" based on his assertion that he relied on attorney T.E.-H.'s "advice to stay home and avoid the warrant" and that "[t]his objectively unreasonable advice resulted in Mullins being sent to prison for 30 years." The state argues that Mullins was not entitled to an evidentiary hearing because "Mullins did not provide any factual support for his claim that ineffective assistance induced his *plea of guilty*." In his reply brief, Mullins argues that "a defendant who raises an ineffective-assistance-of-counsel claim after entering a guilty plea is not limited to arguing that his attorney's deficient performance caused him to plead guilty."

16

A petitioner is entitled to an evidentiary hearing to develop the facts supporting his ineffective assistance claims only if he alleges facts in the petition that, if proved, would affirmatively show that his attorney's representation fell below an objective standard of reasonableness, and that but for the errors, the result would have been different.

*Vance v. State*, 752 N.W.2d 509, 513 (Minn. 2008) (quotation omitted). To prevail on an ineffective-assistance-of-counsel claim in the context of a guilty plea, the defendant must "demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Campos v. State*, 816 N.W.2d 480, 486 (Minn. 2012) (quotation omitted).

Mullins failed to demonstrate that, but for attorney T.E.-H.'s deficient performance, he would not have pleaded guilty. Mullins's motion to withdraw his guilty plea argued that the "plea agreement for 60 days in jail and a long probation period turned into 30 years in prison . . . largely as a result of . . . Attorney [T.E.-H.'s] advice . . . to let Attorney [T.E.-H.] handle the warrant and the rescheduling" of sentencing. But the district court's issuance of a warrant and the rescheduling of sentencing occurred after Mullins pleaded guilty. Thus, even accepting Mullins's allegations about attorney T.E.-H. as true, Mullins cannot show that attorney T.E.-H.'s ineffective assistance led him to plead guilty because the allegations relate to attorney T.E.-H.'s conduct *after* the plea. *See Brown*, 895 N.W.2d at 618 (stating that a court must take the facts alleged in the postconviction petition as true).

Mullins's reply brief to this court acknowledges that his postconviction motion to withdraw his plea for ineffective assistance of counsel "focused on the events that occurred between the plea and the sentencing hearings," but argues that *Winston v. State*,

17

No. A17-1777, 2018 WL 4688428 (Minn. App. Oct. 1, 2018), *rev. denied* (Minn. Dec. 18, 2018), allows for plea withdrawal on this basis. We note that nonprecedential opinions do not bind this court but may be considered as persuasive authority. Minn. R. Civ. App. P. 136.01, subd. 1(c).

In *Winston*, the defendant appealed from the district court's denial of a postconviction petition without an evidentiary hearing on his requests to withdraw his guilty plea or to impose the sentence from his plea agreement. 2018 WL 4688428, at *2. The defendant argued that his attorney "provided him with ineffective assistance after his guilty plea" because his attorney "was not more responsive to his email messages in which he expressed his desire to withdraw his guilty plea and go to trial, and did not file a motion for leave to withdraw his guilty plea before his originally scheduled sentencing hearing." *Id.* at *3 (emphasis omitted). This court determined that the defendant could not show that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at *4. We reasoned that the defendant's "failure to appear for his sentencing hearing was the reason why he was sentenced to 108 months of imprisonment instead of [the] 60 months" in his plea agreement and that "[t]here is no valid reason why his attorney's alleged non-responsiveness should have caused [the defendant] to believe that he was not obligated to appear for sentencing or to believe that his failure to appear would not have adverse consequences." *Id.*

Even if we assume that *Winston* allows for plea withdrawal based on ineffective assistance of counsel after the plea agreement is reached, *Winston* is factually distinct from Mullins's case. Unlike in *Winston*, Mullins's motion to withdraw his guilty plea did not

18

allege any communications with attorney T.E.-H. that impacted his ability to move for plea withdrawal. Indeed, Mullins moved to withdraw his guilty plea before he was sentenced in July 2019.

Mullins's second motion to withdraw his plea stated that "Mullins slid off the road and could not make it to the sentencing hearing" and that, after Mullins missed the sentencing hearing, attorney T.E.-H. "was unavailable," had his law license suspended, and provided bad advice about rescheduling the sentencing hearing that Mullins had missed, resulting in Mullins's sentence of "30 years in prison." Thus, because Mullins's second motion to withdraw his guilty plea alleged facts that, if true, showed Mullins failed to appear for reasons unrelated to attorney T.E.-H's bad advice, we conclude that the district court did not abuse its discretion by denying Mullins an evidentiary hearing on his claim for ineffective assistance of counsel.

**Affirmed.**